STATE OF NORTH CAROLINA v. BOBBY FELTON CARTER

No. 7921SC173

(Filed 17 July 1979)

1. **Constitutional Law § 31— extradition proceeding—free transcript properly denied**

The trial court did not err in denying defendant's motion for an order directing that he be furnished a free transcript of his N. Y. extradition hearing, since an extradition proceeding is intended to be a summary and mandatory executive proceeding so that a transcript would be of minimal value to defendant; defendant had an alternative device which would serve the same function as the transcript; and defendant waited until approximately one week before trial to enter his motion requesting the transcript.

2. **Criminal Law § 114.1— jury instructions—summation of evidence—more time given to State's evidence**

The trial court clearly and accurately gave a summation of the most important testimony offered by defendant and the State, and the fact that the court consumed more time in stating the evidence for the State was of no consequence, as the State presented considerably more evidence than did defendant.

3. **Assault and Battery § 15.5— self-defense—jury instructions**

There was no merit to defendant's contention that the trial court should have included a distinct mandate on self-defense in its charge as to each lesser included offense.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 27 October 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 May 1979.

Defendant was charged in two bills of indictment with: (1) assault upon Calvin Hillian with a deadly weapon with intent to kill resulting in serious bodily injury; and (2) assault upon Cedric Brown with a deadly weapon with intent to kill resulting in serious bodily injury.

At trial, the State's evidence tended to show the following:

On 1 July 1976, defendant was at the Parkland Lounge in Winston-Salem, as were Calvin Hillian and Cedric Brown. When the lounge closed at approximately 1:30 a.m., Hillian and Brown walked outside to the parking lot where they observed John Davis and another person arguing. Hillian told the group to "stop arguing, talking all that junk, because they were friends and

weren't going to fight, anyway." Hillian and Brown observed defendant at his car getting something out of the glove compartment. Hillian and Brown got into Hillian's car to leave, but were approached by the defendant who was carrying a pistol. Defendant slapped Hillian several times and shot him in the right side. Hillian fell to the ground, and the defendant shot him three or four more times. Brown ran toward the lounge to get help, but was shot from behind by the defendant and jumped into a swimming pool. The defendant approached the pool area, pointed and clicked his gun at Brown, and then returned to the spot where Hillian was lying. Defendant's companion pulled Hillian's hair and asked if Hillian planned to testify against the defendant to which Hillian gave a negative response. Defendant then kicked Hillian in the face and shot him again.

Paula Ziglar was at the Parkland Lounge on the evening in question. The defendant asked her to leave with him, but she declined and sat with Hillian until they left at approximately 1:30 a.m. Upon hearing the arguing outside in the parking lot, she ran to her apartment where she shortly thereafter heard five or six gun shots. She returned to find Hillian lying on the ground bleeding.

Mr. and Mrs. Thomas Kinney, in-laws of the defendant, saw the defendant at their home on 1 July 1976. Defendant said that he shot "two niggers." The defendant was last seen in Myrtle Beach, South Carolina but placed several calls to the Kinneys from England from 1976-1978.

In June 1976, the defendant shot his gun "five or six times" in the backyard of the Kinney home. These shell casings were compared to those found after the Parkland Lounge shooting and it was determined that the shells were fired from the same gun.

The defendant offered evidence tending to show the following:

On the night of 1 July 1976, defendant and John Davis had been to several bars drinking. They went to the Parkland Lounge at approximately 1:30 a.m. An argument ensued in the parking lot between defendant, Hillian, and Brown. Hillian pulled a gun and pointed it at defendant's face which prompted the defendant to pull his gun. Defendant started shooting and Hillian fell. Brown

grabbed the defendant's arm and the defendant shot Brown. The witness stated on cross-examination that he had never told this version of what happened prior to trial because he had been threatened with prosecution.

The jury returned verdicts of guilty of assault with a deadly weapon inflicting serious injury. From judgments imposing consecutive sentences of eight to ten years' imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney T. Michael Todd, for the State.*

*Glenn, Crumpler and Habegger, by Larry F. Habegger, for defendant appellant.*

CARLTON, Judge.

[1] Defendant first assigns as error the trial court's denial of his motion for an order directing that he be furnished a free transcript of his New York extradition hearing.

Defendant relies primarily on *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). There, the United States Supreme Court held that a state statute affording defendants the right to appeal criminal convictions, but conditioning appellate review on the filing of a trial transcript, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution if indigent defendants were not provided a transcript of the trial at state expense. While the holding of *Griffin* dealt solely with the availability of transcripts for direct appellate purposes, the rationale of *Griffin* has been extended to broader usage. *Griffin* has been applied to transcripts of preliminary hearings, mistrials, and hearings for petition for writ of habeas corpus. *See Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed. 2d 400 (1971); *Gardner v. California*, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed. 2d 601 (1969); *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed. 2d 41 (1967).

Despite *Griffin's* broad application, neither our nor the appellant's research discloses the extension of *Griffin* to transcripts of extradition hearings. The reasons why such an extension should not occur are obvious by virtue of the nature of the extradition proceeding.

An extradition proceeding is intended to be a summary and mandatory executive proceeding. *See*, U.S. Constitution, Art. IV, § 2, cl. 2; G.S., Chap. 15A, Art. 37 (Uniform Criminal Extradition Act). In an extradition proceeding, once the governor of the asylum state has granted extradition and the defendant has challenged it by way of habeas corpus, the forum court is confined to the consideration of specific questions. These questions include: (1) whether the extradition documents on their face are in order; (2) whether the petitioner has been charged with a crime in the demanding state; (3) whether the petitioner is the person named in the request for extradition; and (4) whether the petitioner is a fugitive. *Michigan v. Doran*, --- U.S. ---, 99 S.Ct. 530, 58 L.Ed. 2d 521 (1978).

Extradition is clearly a function of the executive branch of government; its very nature is extrajudicial. It is not a step in the judicial process leading to an adjudication of the accused's guilt or innocence. It is a mechanical device designed to prevent an accused from avoiding the judicial process by the simple expedient of crossing state lines.

Moreover, in light of the narrow scope of the extradition proceeding, we believe the value of the State's furnishing an extradition hearing transcript to the defendant is minimal. Unlike transcripts of preliminary hearings, mistrials, etc., an extradition hearing transcript would provide little, if any, benefit in terms of trial preparation for defendant. We also note here that the defendant had an alternative device which would serve the same function as the transcript. *See Britt v. North Carolina, supra.* An affidavit of Hillian, containing his version of the events of 1 July 1976, was available to defendant well before the time of his trial. Finally, we note that defendant waited until approximately one week before trial to enter his motion requesting the transcript.

This assignment of error is overruled.

[2] The defendant next contends that the trial court committed prejudicial error by weighted summation of the State's evidence in the charge to the jury. This assignment is without merit.

The requirement that the judge state the evidence is met by presentation of the principle features of the evidence relied on by the prosecution and the defense. *State v. Guffey*, 265 N.C. 331,

144 S.E. 2d 14 (1965); *State v. Davis*, 246 N.C. 73, 97 S.E. 2d 444 (1957). In the case *sub judice*, the trial judge clearly and accurately gave a summation of the most important testimony offered by each side. The fact that the court consumed more time in stating the evidence for the State is of no consequence as the State presented considerably more evidence than the defendant. *See State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed. 2d 102 (1976); *State v. Jessup*, 219 N.C. 620, 14 S.E. 2d 668 (1941).

[3] The defendant next argues that the trial court should have included a distinct mandate on self-defense in its charge as to each lesser included offense. Defendant contends that the holding of *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974) necessitates such multiple mandates. We do not agree.

*State v. Dooley, supra*, held that where defendant presents evidence of self-defense, the trial judge errs in not including in his final mandate to the jury that not guilty by reason of self-defense is a possible verdict.

In this case, the trial judge in the final portion of his charge to the jury stated:

Now, the Court charges you that if the defendant acted in self defense, his actions are excused and he is not guilty. The State has the burden of proving from the evidence and beyond a reasonable doubt that the defendant did not act in self defense. If you find from the evidence beyond a reasonable doubt, as I have defined reasonable doubt to you heretofore, that the defendant, Bobby Felton Carter, assaulted with intent to kill with a deadly weapon inflicting serious bodily harm on Calvin Hillian or if you find that he assaulted Calvin Hillian with a deadly weapon inflicting bodily harm or if you find that he assaulted Calvin Hillian with a deadly weapon, that assault would be excused as being in self defense only if the circumstances at the time he acted were such as would create in the mind of a person or (sic) ordinary firmness a reasonable belief that such action was necessary to protect himself from death or great bodily harm and the circumstances did, in fact, create such a belief in the defendant's mind.

In the conclusion of the final mandate, the trial judge stated:

So I charge you that if you find from the evidence and beyond a reasonable doubt that on or about the seventh day of July—the first day of July, excuse me, not the seventh day of July, the first day of July, 1976, Bobby Felton Carter, the defendant, intentionally assaulted by pointing a gun at or by shooting Calvin Hillian with a deadly weapon, namely a handgun, and that he did these things not acting in self-defense as I have described that defense to you, that you—it would be your duty to find a verdict of guilty of assault with a deadly weapon.

However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Taken contextually, we think the trial court's instructions adequately explained to the jury that they could find the defendant not guilty by reason of self-defense.

We have examined defendant's remaining assignments of error and find them to be without merit.

In the trial below, we find

No error.

Judges VAUGHN and CLARK concur.