STATE OF NORTH CAROLINA v. RODNEY TAYLOR

No. 505A99

(Filed 17 August 2001)

**1. Criminal Law— motion to continue—reasonable time to prepare case**

The trial court did not abuse its discretion in a capital first-degree murder and robbery with a dangerous weapon trial by denying defendant's motion to continue when defendant had twenty-eight days' notice of the trial date, because counsel had adequate notice that the trial was imminent and had a reasonable time to prepare for trial.

**2. Confessions and Incriminating Statements— motion to suppress—Sixth Amendment right to counsel—extradition**

The trial court did not abuse its discretion in a capital first-degree murder and robbery with a dangerous weapon trial by denying defendant's motion to suppress his confession made to North Carolina police officers while he was placed in custody in Florida for the sole purpose of extradition to North Carolina, because: (1) defendant's Sixth Amendment right to counsel had not attached prior to or during defendant's confinement for extradition to North Carolina; (2) defendant knowingly, voluntarily, and understandingly signed a waiver of his rights; and (3) there is no evidence of coercion.

**3. Jury— selection—prosecutor's use of word "necessary"**

The trial court did not err in a capital first-degree murder and robbery with a dangerous weapon trial by allowing the prosecutor to repeatedly use the word "necessary" during jury selection to allegedly imply that the death penalty is necessary to deter

crime, because: (1) it cannot be said that the question as to whether the jurors thought the death penalty was "necessary" conveyed to the jury the impression that the death penalty is a deterrent to crime; and (2) it is improper to speculate as to what each juror felt was the reason for the necessity or lack of necessity for the death penalty.

### 4. Jury— selection—possible biases of prospective jurors

The trial court did not abuse its discretion in a capital first-degree murder and robbery with a dangerous weapon trial by preventing defense counsel from probing the possible biases of prospective jurors, because: (1) the trial court gave defense counsel numerous opportunities to pose rephrased questions to prospective jurors; and (2) although defendant focuses on the trial court's act of sustaining the prosecutor's objection to his question concerning whether a juror thought it was wrong to question what a police officer says, defendant's counsel elicited several answers from the juror concerning his past contacts with police officers and the juror stated that nothing in these contacts would affect his service as a juror.

### 5. Jury— excusal for cause—bias against imposing death penalty

The trial court did not err in a capital first-degree murder and robbery with a dangerous weapon trial by excusing for cause a prospective juror based on his alleged bias against imposing the death penalty because although the prospective juror did not unequivocally state his bias against the death penalty, it cannot be said that the trial court could have only been left with the impression that the juror would follow the law impartially.

### 6. Witnesses— expert—qualifications

The trial court did not abuse its discretion in a capital first-degree murder and robbery with a dangerous weapon trial by ruling that a witness was not qualified to testify as an expert under N.C.G.S. § 8C-1, Rule 702(a) regarding the position of the victim's body when he was shot, because: (1) it did not appear the witness had the experience necessary to testify regarding this particular matter, and the trial court did not believe this testimony would be helpful; and (2) the testimony had previously been elicited from the State's pathologist on cross-examination, and the trial court was within its discretion under N.C.G.S. § 8C-1, Rule 403 to exclude this testimony as cumulative.

**7. Sentencing— capital—mitigating circumstances—mental capacity to appreciate criminality of conduct—mental or emotional disturbance—expert testimony excluded**

The trial court did not err in a capital sentencing proceeding by excluding the testimony of defendant's expert witness as to his opinion on the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance concerning defendant's mental capacity to appreciate the criminality of his conduct or on the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance concerning whether defendant was under the influence of a mental or emotional disturbance at the time of the murder, because: (1) the expert was not qualified to give what was in essence a medical opinion as to any possible mental defect defendant had based on his drug use; and (2) the expert's testimony lacked the requisite uniqueness regarding this defendant.

**8. Sentencing— capital—mitigating circumstances—combining instead of submitting separately**

The trial court did not err in a capital sentencing proceeding by combining requested mitigating circumstances and excluding some submitted mitigating circumstances, instead of submitting the proposed circumstances separately and independently, because the trial court's final list of mitigating circumstances subsumed the proposed mitigating circumstances to the exclusion of none.

**9. Sentencing— capital—mitigating circumstances—request for peremptory instruction on all**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for a peremptory instruction on all mitigating circumstances submitted to the jury, because: (1) a trial court is not required to sift through all the evidence and determine which of defendant's proposed mitigating circumstances entitle him to a peremptory instruction; (2) it is insufficient for a defendant to submit a general request for peremptory instructions without specifying the evidence that supports each of those instructions; and (3) a defendant must also distinguish his requests between statutory and nonstatutory mitigating circumstances.

**10. Sentencing— capital—death penalty proportionate**

The trial court did not err by imposing the death penalty in a first-degree murder case, because: (1) defendant was found

guilty on the basis of premeditation and deliberation and under the felony murder rule; (2) the jury found the N.C.G.S. § 15A-2000(e)(4) aggravating circumstance that the murder was committed to avoid lawful arrest and the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery; (3) defendant left the victim dead in the middle of the road; and (4) defendant admitted that he shot the victim while the victim was on his knees facing away from defendant, showing an egregious disregard for human life.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Fullwood, J., on 23 October 1998 in Superior Court, New Hanover County, upon a jury verdict finding defendant guilty of first-degree murder. On 24 February 2000, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of an additional judgment. Heard in the Supreme Court 12 February 2001.

*Roy A. Cooper, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

BUTTERFIELD, Justice.

On 2 February 1998, defendant was indicted for first-degree murder and for robbery with a dangerous weapon. Defendant was tried capitally before a jury at the 12 October 1998 Criminal Session of Superior Court, New Hanover County. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The jury also found defendant guilty of robbery with a dangerous weapon. Following a capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder conviction. On 23 October 1998, the trial court sentenced defendant to death. The trial court also sentenced defendant to a consecutive minimum sentence of 103 months' imprisonment and a maximum of 133 months' imprisonment for the robbery conviction. Defendant appealed his sentence of death for first-degree murder to this Court as of right. On 24 February 2000, this Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of the robbery conviction and judgment.

At trial, the State's evidence tended to show that on 1 January 1998, defendant and his brother, Kashene Taylor, left the Hillcrest Housing Complex in Wilmington, North Carolina, with Brian Troy shortly before 6:00 p.m. and drove to Bryan Road. Defendant and Troy got out of the car and talked briefly. As Troy knelt in the road, defendant shot him in the head and upper body. Defendant and Kashene Taylor then returned to apartment 4 in the Hillcrest Housing Complex.

The victim's body was discovered by a passing motorist, who summoned the paramedics and police. When the paramedics arrived at 6:32 p.m., they found the victim's lifeless body in the roadway. Officers from the Wilmington Police Department arrived shortly afterwards and secured the scene. An autopsy performed on the victim's body on 2 January 1998 revealed gunshot wounds to the head and the hip. The cause of death was determined to be the gunshot wound to the head.

The victim's father, Willie Troy, Jr. (Mr. Troy), testified that he dropped his son off between 5:00 p.m. and 5:15 p.m. on 1 January 1998 near the intersection of 13th and Mears Streets in Wilmington. He stated that his son had indicated to him that he was going to visit friends at apartment 4. Mr. Troy also testified that he gave his son $10.00 as he got out of the car and that his son was carrying a pager.

The victim sold drugs for defendant. Katie Coe, defendant's girl-friend, testified that she told defendant that the victim had told her that he had spent the money he owed defendant. The victim told defendant that a member of the Wilmington Police Department's city/county vice-narcotics team had confiscated the drugs from him. Sergeant Billy Maultsby of the Wilmington Police Department testified that Ms. Coe told him that defendant did not feel that the victim was being truthful about the drugs and money the victim owed defendant and that defendant was upset by the contradictory stories. Ms. Coe also testified that the victim left apartment 4 sometime before 6:00 p.m. to purchase marijuana. According to Ms. Coe, defendant and Kashene Taylor arrived shortly thereafter and left to find the victim. Veronica Roberts, Michael Coe's girlfriend, testified that she, defendant, Kashene Taylor, Michael Coe, and Katie Coe were all present when the victim arrived. According to Ms. Roberts, defendant motioned for the victim to step outside, and Kashene Taylor followed them.

The victim was not with defendant when he returned to the apartment. Katie Coe testified that defendant was breathing hard when he returned. On the night of 1 January 1998, after Mr. Troy told the police of his son's intention to visit his friends, the police went to apartment 4. Defendant, Michael Coe, and Katie Coe were present when the police arrived. The apartment occupants confirmed that the victim had been there that evening. On 2 January 1998, defendant and Katie Coe left Fayetteville, North Carolina, by bus for New York, New York. During the bus ride to New York, defendant told Ms. Coe that he had shot the victim. Ms. Coe returned to Wilmington from New York after calling the Wilmington Police Department. A magistrate issued a warrant for defendant's arrest on 8 January 1998. Defendant was subsequently located in Fort Lauderdale, Florida.

In Florida, defendant was presented to a Broward County committing magistrate on 9 January 1998. On 11 January 1998, two Wilmington Police Department detectives interviewed defendant in the Broward County jail. At that time, defendant gave taped and written confessions of the murder. Defendant waived extradition and was returned to North Carolina. The arrest warrant was served upon defendant on 23 January 1998.

## PRETRIAL ISSUES

[1] In his first assignment of error, defendant contends that the trial court committed reversible error in denying his motion to continue, thereby denying his constitutional due process rights. Defendant argues that twenty-eight days' notice of the trial date was insufficient time for defendant to prepare his defense adequately. Defendant was appointed counsel in late January 1998 and assistant counsel in early February 1998. A hearing pursuant to Rule 24 of the General Rules of Practice for the North Carolina Superior and District Courts was held on 12 March 1998, at which time defendant was informed that his case would be tried as a capital case. On 1 September 1998, defendant was notified that the trial would begin on 12 October 1998.

Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review. State v. Searles, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). When a motion to continue raises a constitutional issue, the trial court's ruling is fully reviewable upon appeal. Id. Even if the motion raises a constitutional issue, a denial of a motion to continue is grounds for a new trial only when defendant shows both that the denial was erroneous and that he suffered

prejudice as a result of the error. *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

"It is implicit in the constitutional [guarantee] of assistance of counsel . . . that an accused and his counsel shall have a reasonable time to investigate, prepare and present his defense. However, no set length of time is guaranteed and whether defendant is denied due process must be determined under the circumstances of each case." *State v. McFadden*, 292 N.C. 609, 616, 234 S.E.2d 742, 747 (1977). Defendant cites the distance from New Hanover County to defendant's place of confinement, the busy trial schedules of both counsel, and the logistics of obtaining records and procuring witnesses from Florida and New York as having made the twenty-eight days' notice of trial burdensome. Defendant contends that the trial court's denial of the motion to continue denied his constitutional rights by not allowing his attorneys adequate time to prepare for trial. Defendant was represented by two experienced and competent trial attorneys. The record reveals that defendant had filed numerous defense motions well prior to trial. Counsel was given notice that the State was prepared to set the case for trial in June 1998. In its findings, the trial court found that there had been some discussion of an August 1998 trial date. While the record is devoid of any indication that defendant either agreed to or voiced any objection to the August trial date, there is no evidence that the trial judge erred in denying the motion to continue. The record in the case *sub judice* reveals that counsel had adequate notice that the trial was imminent and had a reasonable time to prepare for trial. The trial court's denial of the motion to continue was not erroneous, nor was it prejudicial to defendant. This assignment of error is overruled.

**[2]** Defendant next assigns error to the trial court's denial of the motion to suppress his confession. Defendant contends that the motion to suppress should have been granted based on a violation of his Fifth and Sixth Amendment rights. The record indicates that on 8 January 1998, a New Hanover County magistrate issued a warrant for defendant's arrest for murder. After the warrant was issued, North Carolina authorities were informed that defendant had fled to Fort Lauderdale, Florida. Using the Police Information Network (PIN), North Carolina authorities notified Fort Lauderdale authorities of the arrest warrant. Defendant was located in Fort Lauderdale and was placed into custody.

On 9 January 1998, defendant appeared before a Broward County, Florida, committing magistrate. The committing magistrate ordered

defendant held in the Broward County jail for the Wilmington, North Carolina, murder. At the request of the Florida public defender, the judge issued an oral order prohibiting law enforcement officers from speaking to defendant about the matter. On Sunday, 11 January 1998, detectives from the Wilmington Police Department went to the Broward County jail and interviewed defendant. Defendant then confessed to the victim's murder. Defendant contends that his Sixth Amendment right to counsel attached upon appointment of counsel at his 9 January 1998 extradition probable cause hearing before the Florida committing magistrate. We disagree.

Central to defendant's argument is the point at which defendant's Sixth Amendment right to counsel attached. It is well settled that an accused is entitled to the assistance of counsel at every critical stage of the criminal process as constitutionally required under the Sixth and Fourteenth Amendments to the United States Constitution. As we have said previously, a defendant's right to counsel under the Sixth and Fourteenth Amendments "attaches only at such time as adversary judicial proceedings have been instituted 'whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *State v. Franklin*, 308 N.C. 682, 688, 304 S.E.2d 579, 583 (1983) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972)), *overruled on other grounds by State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985). This Court stated in *State v. McDowell*, 301 N.C. 279, 289, 271 S.E.2d 286, 293 (1980), *cert. denied*, 450 U.S. 1025, 68 L. Ed. 2d 220 (1981):

> While it is true that the investigation had narrowed its focus upon [the defendant], it had not so progressed that the state had committed itself to prosecute. It is only when the defendant finds himself confronted with the prosecutorial resources of the state arrayed against him and immersed in the complexities of a formal criminal prosecution that the sixth amendment right to counsel is triggered as a guarantee.

Initially, we must determine if defendant's Sixth Amendment right to counsel had attached prior to his confinement in Florida. In what appears to be a case of first impression, the instant case presents us with the question of whether the issuance of an arrest warrant for first-degree murder alone is sufficient to trigger the Sixth Amendment right to counsel. The United States Supreme Court has expressly declined to extend a defendant's Sixth Amendment right to counsel to the point of his arrest. The Court's rulings in *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246

(1964); *Kirby*, 406 U.S. 682, 32 L. Ed. 2d 411; and *Brewer v. Williams*, 430 U.S. 387, 51 L. Ed. 2d 424 (1977), clearly established that law enforcement officers cannot initiate interrogation of a defendant without counsel present after the right to counsel has attached. In *Williams*, the defendant's right to counsel attached at his arraignment; however, in *Massiah*, the right attached at indictment. *Williams* dispelled the notion that the *Massiah* rule was applicable only after indictment.

In *United States v. Gouveia*, 467 U.S. 180, 81 L. Ed. 2d 146 (1984), the Court declined to extend the *Massiah-Williams* rule to the time of a defendant's arrest. The Court in *Gouveia* plainly stated, "we have never held that the right to counsel attaches at the time of arrest." *Id.* at 190, 81 L. Ed. 2d at 155. Rather, the determination of when the right to counsel attaches is based on the rule established in *Kirby* that the right attaches only upon the commencement of adversary judicial criminal proceedings where the State has committed itself to prosecute.

As the Court noted in *Gouveia*, "the right to counsel exists to protect the accused during trial-type confrontations with the prosecutor." *Id.* Under N.C.G.S. § 15A-642(b), "indictment may not be waived in a capital case or in a case in which the defendant is not represented by counsel." An arrest warrant for first-degree murder is not a sufficient charging document upon which a defendant can be tried. Therefore, an arrest warrant for first-degree murder in this state is not a formal charge as contemplated under *Kirby*. Defendant's Sixth Amendment right to counsel did not attach either at the issuance of the warrant or at the time of his arrest upon the warrant following his return to North Carolina.

Defendant bases a portion of his argument on the mistaken belief that he was arrested in Florida for the charge of murder and attempts to incorporate substantive Florida law that would pertain only to a defendant being charged with a crime committed in Florida. Contrary to defendant's allegations that he was not picked up as a fugitive, it is clear to us that defendant, who was suspected of murder in North Carolina and not Florida, was placed into custody in Florida for the sole purpose of extradition to North Carolina.

Florida and North Carolina have adopted a Uniform Criminal Extradition Act. Under the Act, the asylum state may hold the fugitive until a Governor's Warrant is issued by the demanding state's executive. Extradition is a right granted to the states under Article IV,

Section 2, Clause 2 of the United States Constitution. Extradition is based upon comity and full faith and credit between the states in order to facilitate the speedy trial of persons ultimately prosecuted in the demanding state. *See* 31A Am. Jur. 2d *Extradition* §§ 1-3 (1989). An extradition proceeding is intended to be a summary and mandatory executive proceeding. *State v. Owen*, 53 N.C. App. 121, 123, 280 S.E.2d 44, 45, *disc. rev. denied*, 304 N.C. 200, 285 S.E.2d 107 (1981); *State v. Carter*, 42 N.C. App. 325, 328, 256 S.E.2d 535, 537, *appeal dismissed and disc. rev. denied*, 298 N.C. 301, 259 S.E.2d 302 (1979).

Under both North Carolina and Florida law, an indigent person being held for extradition is entitled to appointed counsel. N.C.G.S. § 7A-451(a)(5) (1999); Fla. Stat. ch. 941.10 (2001). The right to counsel for indigents in extradition proceedings is statutory, not constitutional. Here, defendant's Florida counsel was appointed to represent defendant during his extradition proceeding. A fugitive may challenge extradition by applying for a writ of *habeas corpus* in the asylum state. We note that the record is devoid of any indication that defendant sought a writ of *habeas corpus* while in Florida. The question of whether defendant would have had a constitutional right to counsel during a Florida *habeas corpus* proceeding is not relevant here. Furthermore, when a fugitive voluntarily returns to North Carolina, he has waived his right to challenge those extradition matters which are exclusive to the asylum state. *State v. Cutshall*, 109 N.C. 764, 772, 14 S.E. 107, 109 (1891).

On 11 January 1998, two detectives with the Wilmington Police Department arrived at the Broward County jail to question defendant. Defendant gave detailed taped and written confessions. Defendant argues that this was in violation of the committing magistrate's bench order that no law enforcement officers speak to defendant concerning "this matter." A determination of whether the actions of the North Carolina law enforcement officers violated the Florida magistrate's order is not dispositive of the admissibility of defendant's confession in his prosecution for murder in North Carolina.

Defendant maintains that the requested order prohibiting law enforcement contact was an implied assertion to deal with law enforcement officers, from any jurisdiction, only through counsel. Defendant's argument is premised on the belief that his Sixth Amendment right to counsel had attached at his arrest or with the appointment of counsel. Our determination that the right to counsel had not attached nullifies any merit defendant's argument may have had. This leaves any violation of the magistrate's order as a matter

exclusively for the Florida courts. Any violation did not affect defendant's constitutional rights and, therefore, is not relevant to our considerations. Without any attachment of the Sixth Amendment right to counsel, a suspect is free to waive the rights available to him under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and its progeny.

The question before this Court is whether defendant knowingly and intelligently waived his *Miranda* rights prior to his 11 January 1998 confession. Defendant was read his *Miranda* rights at 10:45 a.m. on 11 January 1998. Defendant then knowingly, voluntarily, and understandingly signed a waiver of those rights. Defendant's confession was untainted by coercion and was properly admissible at trial.

Defendant's Sixth Amendment right to counsel did not attach prior to or during his confinement for extradition to North Carolina. The right was not triggered by the issuance of the arrest warrant, the detention of defendant in Florida, or the appointment of counsel for extradition purposes. We hold that there was no violation of defendant's Fifth, Sixth, or Fourteenth Amendment rights. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress his confession. This assignment of error is overruled.

## JURY SELECTION

[3] Defendant also assigns error to the trial court's ruling allowing the prosecutor to repeatedly use the word "necessary" during jury selection. Defendant maintains that the word "necessary" implies to the prospective jurors that the death penalty is necessary to deter crime. As both defendant and the State properly observe, this Court examined a similar occurrence in *State v. Willis*, 332 N.C. 151, 420 S.E.2d 158 (1992), in which we stated:

> We also cannot say that the question as to whether the jurors thought the death penalty was "necessary" conveyed to the jury the impression that the death penalty is a deterrent to crime. The question does not imply why the death penalty is necessary and the members of the jury might have different reasons for thinking it is necessary. We cannot speculate as to what each juror felt was the reason for the necessity or the lack of necessity for the death penalty.

*Id.* at 182, 420 S.E.2d at 173. Defendant has presented no persuasive argument that distinguishes the facts in the instant case from those in *Willis*. This assignment of error is without merit.

**[4]** In conjunction with the preceding assignment of error, defendant maintains that the trial court erred in not allowing defense counsel to probe the possible biases of prospective jurors. Defendant identifies several instances where the trial court sustained the prosecutor's objections to defense counsel's *voir dire* questions. Many of the instances cited by defendant relate to the prosecutor's use of the word "necessary." There remains one instance that requires our consideration.

"The extent and manner of questioning during jury *voir dire* is within the sound discretion of the trial court." *State v. Richardson,* 346 N.C. 520, 529, 488 S.E.2d 148, 153 (1997), *cert. denied,* 522 U.S. 1056, 239 L. Ed. 2d 652 (1998). "It is well recognized in this jurisdiction that both the State and defendant have a right to question prospective jurors about their views on the death penalty so as to insure a fair and impartial verdict." *State v. Adcock,* 310 N.C. 1, 10, 310 S.E.2d 587, 593 (1984). "The extent and manner of inquiry into prospective jurors' qualifications in a capital case is a matter that rests largely in the trial judge's discretion and his rulings will not be disturbed absent a showing of an abuse of that discretion." *Id.* Examination of the record indicates that the trial judge gave defense counsel numerous opportunities to pose rephrased questions to prospective jurors. In particular, defendant focuses on the trial court's act of sustaining the prosecutor's objection to his question concerning whether a juror thought it was wrong to question what a police officer says. This, defendant maintains, precluded him from determining whether the juror had any biases toward police officers.

To the contrary, immediately after the prosecutor's objection was sustained, defendant's counsel elicited several answers from the juror concerning his past contacts with police officers. This colloquy ended with the juror stating that there was nothing in these contacts that would affect his service as a juror. We hold that defendant has failed to show any abuse of discretion on the part of the trial judge. This assignment of error is overruled.

**[5]** Defendant also assigns error to the trial court's excusal for cause of a prospective juror, alleging that the juror was qualified to serve under *Wainwright v. Witt,* 469 U.S. 412, 83 L. Ed. 2d 841 (1985), and

*Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968). It is well settled in this state that a prospective juror's bias against the death penalty need not be proven with " 'unmistakable clarity.' " *State v. Jaynes*, 353 N.C. 534, 551, 549 S.E.2d 179, 193 (2001) (quoting *State v. Miller*, 339 N.C. 663, 679, 455 S.E.2d 137, 145, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995)); *accord State v. Davis*, 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). It is not a matter of whether the venireman utters formulary words that determines his fitness to serve in a capital trial. Rather, it is the juror's ability to adhere to his oath and follow the law as given by the trial court. "[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Wainwright*, 469 U.S. at 425-26, 83 L. Ed. 2d at 852. Reviewing courts are required to pay deference to the trial court's judgment concerning the juror's ability to follow the law impartially. *Davis*, 325 N.C. at 624, 386 S.E.2d at 426.

Defendant points to the lengthy *voir dire* of Joseph Sylvester, attempting to illustrate Mr. Sylvester's desire to follow the law impartially. Mr. Sylvester stated on several occasions that he was in favor of the death penalty. However, when asked if he could "be part of the machinery that imposes the death penalty," he responded, "No, sir." Mr. Sylvester continued to give conflicting answers that were observable by the trial judge. After rehabilitation, where he indicated he could follow the judge's instructions, Mr. Sylvester was asked by the trial judge if he could vote for the death penalty. Mr. Sylvester responded, "See, that, I'm not sure yet. I'm for the death penalty, but I myself, personally, I don't know if I can handle it, that's what I'm saying." Faced with the conflicting responses of the juror, the trial judge allowed the motion to excuse the juror for cause. Although the venireman did not unequivocally state his bias against the death penalty without conflicting himself, we cannot say that the trial court could have only been left with the impression that the juror would follow the law impartially. We give the trial court due deference in its ability to determine this juror's ability to follow the law impartially. Accordingly, we defer to the trial judge and overrule this assignment of error.

## GUILT-INNOCENCE PHASE

[6] Defendant assigns error to the trial court's ruling that Wayne Hill was not qualified to testify as an expert witness regarding the posi-

tion of the victim's body when he was shot. The admissibility of expert testimony is governed by Rule 702 of the North Carolina Rules of Evidence, which provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion." N.C.G.S. § 8C-1, Rule 702(a) (1999). "It is undisputed that expert testimony is properly admissible when such testimony can assist the jury . . . . [T]he trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 139-40, 322 S.E.2d 370, 376 (1984). "Although an expert's opinion testimony is not objectionable merely because it embraces an ultimate issue, it must be of assistance to the trier of fact in order to be admissible." *State v. Jackson*, 320 N.C. 452, 459-60, 358 S.E.2d 679, 683 (1987).

After careful review of the record, we can find no evidence that the trial judge abused his discretion in finding that Wayne Hill was not qualified to testify as to the position of the victim's body when the first shot was fired. The trial judge aptly observed that while the witness had extensive experience in a number of areas, it did not appear that he had the experience necessary to testify regarding this particular matter. The tendered witness has an associate of applied science degree in police sciences, is an approved instructor in Massachusetts for an occupational school training course on crime-scene photography and investigation, has self-published at least two pamphlets on ammunition, and has had emergency medical technician ambulance training. He has also had the opportunity to view several accident scenes, help set a broken leg, review autopsy photographs that he obtained from various medical institutions, and receive training in tae kwon do and karate in the Marine Corps. The record reveals that the witness planned to testify chiefly to the possibility that the victim could have been shot in some position other than kneeling. This testimony had previously been elicited from the State's pathologist on cross-examination. Indeed, the judge was well within his discretion under N.C.G.S. § 8C-1, Rule 403 to exclude this testimony as cumulative. We do not speculate as to whether the witness' testimony would or would not have embraced the ultimate question of defendant's guilt had he been allowed to testify. It is sufficient that the trial judge properly rejected the tendered expert because he was not satisfied with the witness' expertise to testify in this area and did not believe

that this witness' testimony would be helpful. This assignment of error is overruled.

## SENTENCING PROCEEDING

[7] Defendant alleges that the trial court erroneously excluded defendant's expert witness' testimony during the sentencing proceeding. Dr. Darrell Irwin was accepted by the trial court as an expert in sociology and criminology. Dr. Irwin was allowed to testify extensively about defendant's childhood and adolescent environments in which violence and drugs were rife. The witness was not allowed to give an opinion on defendant's mental capacity to appreciate the criminality of his conduct or on whether defendant was under the influence of a mental or emotional disturbance at the time of the murder. The trial court, based on the witness' allowed testimony regarding defendant's drug use on the day of the murder, submitted the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance, that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, but did not submit the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance, that the murder was committed while defendant was under the influence of a mental or emotional disturbance. Defendant argues that the excluded testimony would have increased the likelihood that at least one juror would have found the (f)(6) mitigating circumstance and would have supported the submission of the (f)(2) mitigating circumstance. We do not find defendant's arguments convincing.

Defendant correctly states that the admissibility of mitigating evidence during the sentencing proceeding is not constrained by the Rules of Evidence. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1999). However, the trial judge may exclude evidence that is "repetitive, unreliable, or lacking an adequate foundation." *State v. Locklear*, 349 N.C. 118, 158, 505 S.E.2d 277, 300 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). Defense counsel asked Dr. Irwin in the offer of proof, "Based on that model of drug violence, do you have an opinion about whether Rodney Taylor could conform his conduct to the requirements of the law?" He responded, "I think he operated in a certain culture, which is a drug dealing subculture, and the conduct there is not in accordance with the law." Defense counsel then asked Dr. Irwin, "Is it your opinion that his ability to conform his conduct was impaired?" "Yes," he responded. While Dr. Irwin was clearly qualified to give his opinion as to the possible cultural affects living in a drug-infested environment would have had on defendant, he was not qualified to give what is in essence a medical opinion as to any possible

mental defect, as his training and experience were insufficient to allow the court to admit this portion of his testimony. The trial judge properly exercised his discretion in excluding testimony that was unreliable for its intended purpose. Although the courts have often properly allowed the testimony of psychiatrists and psychologists to address mitigating circumstances focused on a particular defendant's mental state, we do not believe it proper to allow a sociologist who studies the functions and patterns of groups to give this type of testimony. Indeed, the above portions of testimony could have applied to any family member or associate of defendant who grew up in the same environment. The primary purpose of mitigating circumstances is, as defendant notes, to treat the capital defendant with "that degree of respect due the uniqueness of the individual." *Lockett v. Ohio*, 438 U.S. 586, 605, 57 L. Ed. 2d 973, 990 (1978). The witness' testimony lacked the requisite uniqueness regarding this defendant, and the trial court did not err in excluding the testimony. Accordingly, defendant was not entitled to submission of the (f)(2) mitigating circumstance or enhancement of the (f)(6) mitigating circumstance by this testimony. These assignments of error are overruled.

[8] Defendant submitted fifty-three nonstatutory mitigating circumstances at the charge conference. In addition to statutory mitigating circumstances, the final list included twelve nonstatutory mitigating circumstances and the N.C.G.S. § 15A-2000(f)(9) mitigating circumstance. Defendant assigns as error the trial court's combining of the requested mitigating circumstances and the exclusion of some submitted mitigating circumstances. After a careful and thorough review of the record, we hold that the trial court's final list of mitigating circumstances subsumed the proposed mitigating circumstances to the exclusion of none.

This Court has held that " '[t]he refusal [of a trial judge] to submit . . . proposed circumstances separately and independently . . . [is] not error.' " *State v. Hartman*, 344 N.C. 445, 468, 476 S.E.2d 328, 341 (1996) (quoting *State v. Greene*, 324 N.C. 1, 21, 376 S.E.2d 430, 443 (1989), *sentence vacated on other grounds*, 494 U.S. 1002, 108 L. Ed. 2d 603 (1990)), *cert. denied*, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997). We have also stated that "[i]f a proposed nonstatutory mitigating circumstance is subsumed in other statutory or nonstatutory mitigating circumstances which are submitted, it is not error for the trial court to refuse to submit it." *State v. Richmond*, 347 N.C. 412, 438, 495 S.E.2d 677, 691, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998). For each of the contended omitted mitigating circum-

stances, there existed a corresponding mitigating circumstance that subsumed the proposed one. Also, at least one juror found the (f)(9) catchall mitigating circumstance. This finding indicates that the jury availed itself of the opportunity to consider any evidence of mitigating value. Defendant has failed to demonstrate any omission or any improper combination of mitigating circumstances inconsistent with the holdings of this Court. These assignments of error are overruled.

[9] In another assignment of error, defendant alleges that the trial court committed reversible constitutional error by denying his request for a peremptory instruction on all mitigating circumstances submitted to the jury. Defendant maintains that all of the mitigating circumstances, except the (f)(6) mitigating circumstance, submitted to the jury were supported by uncontroverted evidence and that he was therefore entitled to peremptory instructions on each. We disagree. Defendant submitted a general written request asking that the court "give a peremptory instruction on all the mitigating circumstances submitted." This Court held in *State v. Gregory*, 340 N.C. 365, 416, 459 S.E.2d 638, 667 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996), that a trial court is "not required to sift through all the evidence and determine which of defendant's proposed mitigating circumstances entitle him to a peremptory instruction." It is insufficient for a defendant to submit a general request for peremptory instructions without specifying the evidence that supports each of those instructions. A defendant must also distinguish his requests between statutory and nonstatutory mitigating circumstances. *Id.*; *see also Locklear*, 349 N.C. at 161, 505 S.E.2d at 302. Defendant failed to satisfy either of these requirements in his request. The trial court did not err in denying defendant's peremptory instruction request. This assignment of error is without merit.

## PRESERVATION ISSUES

Defendant raises thirteen additional issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving these issues for possible further judicial review: (1) the trial court committed reversible error by denying defendant's request for allocution before the jury; (2) the trial court erred in instructing that each juror "may," rather than "must," consider any mitigating circumstances the juror determined to exist when deciding sentencing Issues Three and Four; (3) the trial court committed reversible error in denying defendant's motions to dis-

close the theory upon which the State would seek a conviction of first-degree murder and defendant's motion to dismiss the indictment for first-degree murder; (4) the trial court erred in denying defendant's request for individual *voir dire* and sequestration of the jurors; (5) the North Carolina death penalty statute is unconstitutional; (6) the trial court erred in denying defendant's motion for a bill of particulars as to aggravating circumstances; (7) the trial court committed reversible error in denying defendant's motion for an instruction on residual doubt as a mitigating circumstance; (8) the trial court committed reversible error in instructing the jury that all evidence presented in the guilt phase of the trial was competent for jury consideration during the sentencing phase of the trial; (9) the trial court's instructions defining the burden of proof applicable to mitigating circumstances violated defendant's constitutional rights because they used the inherently ambiguous and vague terms "satisfaction" and "satisfy," thus permitting jurors to establish for themselves the legal standard to be applied to the evidence; (10) the trial court committed reversible error in its instructions that the jury had a "duty" to recommend death; (11) the trial court erred in its instructions that the answers to Issues One, Three, and Four must be unanimous; (12) the trial court committed reversible error in its instructions that permitted jurors to reject a submitted mitigating circumstance because it had no mitigating value; and (13) the trial court committed reversible error in its instructions as to what each juror may consider regarding the mitigating circumstances in Issues Three and Four. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we reject these assignments of error.

## PROPORTIONALITY REVIEW

**[10]** Finally, this Court has the exclusive statutory duty in capital cases to review the record to determine (1) whether the record supports the aggravating circumstances found by the jury; (2) whether the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (1999). Having thoroughly reviewed the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. We find no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbi-

trary consideration. Thus, we turn to our final statutory duty of proportionality review.

In the present case, the jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. At defendant's capital sentencing proceeding, the jury found the two aggravating circumstances submitted for its consideration: that the murder was committed to avoid a lawful arrest, N.C.G.S. § 15A-2000(e)(4), and that the murder was committed while defendant was engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5).

Three statutory mitigating circumstances were submitted for the jury's consideration: defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); defendant's age at the time of the murder, N.C.G.S. § 15A-2000(f)(7); and the catchall mitigating circumstance, that there existed any other circumstance arising from the evidence that the jury deems to have mitigating value, N.C.G.S. § 15A-2000(f)(9). Of these, the jury found the existence of only the (f)(9) mitigator. Of the twelve nonstatutory mitigating circumstances submitted by the trial court, one or more jurors found the following four to have mitigating value: that defendant was an illegitimate child without parental guidance and without supervision for extended periods of time; that all of defendant's "parental figures," including his mother, have been involved in the use and/or sale of drugs since defendant's birth and were incarcerated for such activity during defendant's formative years; that when defendant was a child, his mother moved the family into several homes and neighborhoods where drugs were openly sold and violence was prevalent; and that when defendant was a teenager, his mother sold the family's possessions, stole from her sons, and prostituted herself for drug money.

The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). "In conducting our proportionality review, we must compare the present case with other cases in which this

Court has ruled upon the proportionality issue." *State v. McCollum,* 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied,* 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

We have determined the death penalty to be disproportionate on seven occasions. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

Several characteristics of this case support this conclusion. Defendant was convicted of first-degree murder on the basis of premeditation and deliberation. We have recognized that "a finding of premeditation and deliberation indicates 'a more calculated and cold-blooded crime.' " *State v. Harris,* 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994) (quoting *State v. Lee,* 335 N.C. 244, 297, 439 S.E.2d 547, 575, *cert. denied,* 513 U.S. 891, 130 L. Ed. 2d 162 (1994)), *cert. denied,* 514 U.S. 1100, 131 L. Ed. 2d 752 (1995). In none of the cases held disproportionate by this Court did the jury find the existence of the (e)(4) aggravating circumstance, as the jury did here. Moreover, in only two cases has this Court held a death sentence disproportionate despite the existence of multiple aggravating circumstances. In *Young,* this Court considered *inter alia* that the defendant had two accomplices, one of whom "finished" the crime. *Young,* 312 N.C. at 688, 325 S.E.2d at 193. By contrast, defendant in the present case acted alone. In *Bondurant,* this Court weighed the fact that the defendant expressed concern for the victim's life and remorse for his action by accompanying the victim to the hospital. *Bondurant,* 309 N.C. at 694, 309 S.E.2d at 182-83. In the present case, defendant left the victim dead in the middle of a road.

We also consider cases in which this Court has held the death penalty proportionate; however, "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *State v. McCollum,* 334 N.C. at 244, 433 S.E.2d at 164 (1993). We conclude that this case is more similar to cases in which we have found the

sentence of death proportionate than to those in which we have found it disproportionate.

This Court previously held proportionate a death sentence based, as in the present case, solely on the (e)(4) and (e)(5) statutory aggravating circumstances. *State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). Further, there are four statutory aggravating circumstances that, standing alone, this Court has held sufficient to support a sentence of death. *See State v. Warren*, 347 N.C. 309, 328, 492 S.E.2d 609, 619 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998). The (e)(5) statutory circumstance, which the jury found here, is among those four. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995).

In the present case, defendant admitted to law enforcement officials that he shot the victim while the victim was on his knees facing away from defendant. The crime of which defendant was convicted and the circumstances under which it occurred manifest an egregious disregard for human life. Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court is not disproportionate.

We conclude that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Accordingly, the sentence of death recommended by the jury is left undisturbed.

NO ERROR.