[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1070 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1071 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1072 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1073 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1074 
The appellant, Derrick Anthony DeBruce, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. In 1992, DeBruce was convicted of murdering Doug Battle during the course of robbing the occupants of an Auto Zone automobile-parts store in Talladega. He was sentenced to death. His conviction and sentence were affirmed on direct appeal.DeBruce v. State, 651 So.2d 599 (Ala.Crim.App. 1993), aff'd,651 So.2d 624 (Ala. 1994). We issued the certificate of judgment on January 9, 1995. On December 6, 1996, DeBruce filed a postconviction petition pursuant to Rule 32, Ala.R.Crim.P. He filed amended petitions in April 1999 and June 1999. The circuit court held evidentiary hearings on DeBruce's petition in July 1999 and October 1999. By order dated April 7, 2000, the circuit court denied DeBruce's Rule 32 petition. This appeal followed.
The evidence at DeBruce's trial showed that on August 6, 1991, six men — Willie Brantley, Charles Lee Burton, Andre Lee Jones, Deon D. Long, Lujuan McCants, and DeBruce — robbed the occupants of the Auto Zone store in Talladega.[1] Five of the six men entered the store armed with guns. McCants testified that DeBruce was armed with a .380 caliber handgun and that he was the last of the five men to leave the store. McCants said that after the robbery when the six were in the car leaving the scene DeBruce said that he had killed the man inside the store to protect McCants. Battle was shot in the back as he was lying face-down on the floor.
On direct appeal we reviewed the record of DeBruce's trial for plain error; i.e., error that was not objected to at trial. See Rule 45A, Ala.R.App.P. However, the plain-error standard of review does not apply to postconviction proceedings attacking a death-penalty conviction. We have repeatedly held that the procedural default grounds in Rule 32 apply with equal force to all cases — even those where the defendant has been sentenced to death. See Hamm v. State, [Ms. CR-99-0654, February 1, 2002] ___ So.2d ___ (Ala.Crim.App. *Page 1075 
2002); Hill v. State, 695 So.2d 1223 (Ala.Crim.App.), cert. denied, 520 U.S. 1205, 117 S.Ct. 1572, 137 L.Ed.2d 717 (1997);Thompson v. State, 615 So.2d 129 (Ala.Crim.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993);Neelley v. State, 642 So.2d 494 (Ala.Crim.App. 1993), writ quashed, 642 So.2d 510 (Ala. 1994), cert. denied, 514 U.S. 1005,115 S.Ct. 1316, 131 L.Ed.2d 197 (1995); State v. Tarver,629 So.2d 14 (Ala.Crim.App. 1993).
When evaluating a circuit court's ruling on a postconviction petition we apply an abuse-of-discretion standard. "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition. See Roberts v. State, 516 So.2d 936 (Ala.Cr.App. 1987)." Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App. 1999). See Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992). However, if the evidence is undisputed, then we review the issue de novo — affording no deference to the circuit court's findings. See Hart v. State, 852 So.2d 839 (Ala.Crim.App. 2002).
Moreover, as we stated in Bui v. State, 717 So.2d 6, 13
(Ala.Crim.App. 1997):
 "In a Rule 32 proceeding, the petitioner has `the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326
(Ala.Cr.App. 1994); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992)."
 I.
DeBruce initially argues that he was denied a fair trial because, he argues, jurors failed to truthfully answer questions during voir dire examination. He specifically argues that three jurors failed to disclose vital information. DeBruce also asserts that the circuit court erred in finding that this issue was procedurally barred in this collateral proceeding.
 A.
DeBruce argues that juror P.L. failed to disclose that her father was in law enforcement. Specifically, DeBruce contends that P.L., although asked if she had any relatives involved in law enforcement, failed to disclose that her father was a former police officer, a former chief of police, and, at the time of DeBruce's trial, an employee of the Alabama Department of Corrections in Montgomery.
The circuit court held that this claim was procedurally barred because DeBruce failed to show that the evidence in support of the allegation was newly discovered. The circuit court also addressed this issue on the merits and stated in its order denying postconviction relief:
 "In an abundance of caution, and strictly as a secondary and alternative ruling, the Court will address the merits of each claim. In Tomlin v. State, 695 So.2d 157, 170 (Ala.Crim.App. 1996), the Court of Criminal Appeals applied five factors in reviewing claims of juror misconduct: (1) temporal remoteness of the matter inquired about; (2) the ambiguity of the question propounded; (3) the juror's inadvertence or willfulness in failing to answer; (4) the failure of the juror to recollect; and (5) the materiality of the matter inquired about. The question of probable prejudice is primarily within the trial court's sound discretion and will be reversed only upon a showing of an abuse of that discretion. Thomas v. State, 622 So.2d 415, 418
(Ala.Crim.App. 1992). Where a trial court investigates the circumstances under *Page 1076 
which the claim arose and determines that the rights of the petitioner were not prejudiced, the trial court will generally not be held to have abused its discretion. Burell v. State, 680 So.2d 975
(Ala.Crim.App. 1996). It is not simply any failure on the part of a juror to properly respond to any question that entitles a petitioner to a new trial, but rather whether that failure to answer resulted in probable prejudice to the petitioner. Washington v. State, 539 So.2d 1089, 1095 (Ala.Crim.App. 1988).
"1. Juror [P.L.]
 "[P.L.] did not answer the question regarding family in law enforcement. At the evidentiary hearing, DeBruce presented [P.L.] as a witness, who testified that her father is [W.W.]. [W.W.] held various positions in the Talladega County Police Department in the mid-1970's, including acting police chief. [W.W.] then became employed by the Alabama Department of Corrections, where he worked until 1995.
 "The Court finds that the first Tomlin factor, temporal remoteness, is relevant because actual `law enforcement' activities of [W.W.] occurred in the mid-1970's, approximately 20 years before the trial of this matter. The second inquiry, the ambiguity of the question propounded, is also relevant. The term `law enforcement' usually denotes police officer or prison worker. The fact that [W.W.] worked in Montgomery at the actual Department of Corrections does not easily lead one to consider that he was involved in a `law enforcement' career. Third, [P.L.] did not willfully or intentionally `conceal' information. She stated at the Rule 32 hearing that `if [she] had heard that question, [she] would have jumped up if there was a way of getting out of being a juror for that case.' She said that she `evidently' did not hear the question. She did not want to be on a sequestered jury, and did not want to serve on a murder case. The fourth factor, the failure to recollect, is not at issue in this case. [P.L.] fully recollected the issue in question.
 "Finally is the materiality of the question at issue. [Defense counsel] testified that he would have used a peremptory strike to remove her. The statement from a biased defense attorney that he finds the question material is not dispositive. While it may be material, any potential prejudice was rebutted by [P.L.'s] statement that she based her opinion on nothing other than the facts, the evidence, and the law as instructed by the trial court. [P.L.] testified that she did not consider her father's service in law enforcement during deliberations."
The circuit court based its finding that this issue was procedurally barred on this Court's holding in Brown v. State,807 So.2d 1 (Ala.Crim.App. 1999), cert. quashed, 807 So.2d 17
(Ala. 2001). However, Brown was modified by the subsequent Alabama Supreme Court decision in Ex parte Pierce,851 So.2d 606 (Ala. 2000). The Pierce Court addressed whether the defendant's claim concerning inappropriate juror contact with a key State witness required that Pierce prove that the claim met the definition of newly discovered evidence before it would be entertained in a postconviction petition. The Pierce Court stated:
 "While the information about Sheriff Whittle's contacts with the jury may be `newly discovered,' Pierce does not seek relief under Rule 32.1(e). Pierce does not contend that `[n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court.' Rule 32.1(e). Instead, Pierce's claim fits under Rule 32.1(a): `The constitution *Page 1077 
of the United States or of the State of Alabama requires a new trial. . . .' Rule 32.1(a) states a ground for relief distinct from that stated in Rule 32.1(e). If every defendant had to prove that the facts on which he relies for postconviction relief satisfy the elements of `newly discovered material facts' set out by Rule 32.1(e), then constitutional violations could rarely be raised in a Rule 32 petition, and Rule 32.1(a) would be superfluous for all cases except those in which the defendant could prove innocence. There is a place for this Court to review constitutional violations that could not be discovered by the date of trial or in time to be raised in a direct appeal, even if the defendant is guilty of the crime charged. Furthermore, the application of the requirements of Rule 32.1(e) in cases like Pierce's would impose a nearly impossible standard on a defendant filing a Rule 32 petition. A defendant could rarely, if ever, establish, through the same facts tending to prove that the jury was prejudiced or improperly influenced, that he is innocent of the crime charged. Yet, jury prejudice or improper influence is an important issue for this Court to review.
". . . .
 "Although Rule 32.1(e) does not preclude Pierce's claim, Rule 32.2(a)(3) and (5) would preclude Pierce's claim if it could have been raised at trial or on appeal."
851 So.2d at 613-14.
According to the Supreme Court's decisions in Pierce and Exparte Dobyne, 805 So.2d 763 (Ala. 2001), a petitioner raising a claim of juror misconduct may raise the claim in a postconviction petition as a constitutional violation. However, the petitioner must show that the claim is not subject to the procedural default grounds contained in Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. It appears from the record that DeBruce's counsel did not learn of P.L.'s father's law enforcement background until approximately five years after DeBruce was tried.
Given the Supreme Court's holdings in Pierce and Dobyne, the circuit court incorrectly determined that this issue was procedurally barred. However, the circuit court also addressed this issue on the merits in its in-depth order denying relief. Based on the Supreme Court's decisions in Pierce and Dobyne, and because of the discrepancy in the law when the circuit court considered this issue, we will address the merits of this issue.
When evaluating a juror-misconduct claim we apply the standard articulated by the Alabama Supreme Court in Ex parte Dobyne.
The Supreme Court stated:
 "It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See Fabianke v. Weaver, 527 So.2d 1253 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire `automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.' Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335
(1970); see also Dawson v. State, [710 So.2d 472] at 474 [(Ala. 1997)]; and Reed v. State, [547 So.2d 596 (Ala. 1989)]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is `whether the defendant might have been prejudiced by a veniremember's failure to make a proper response.' Ex parte Stewart, 659 So.2d [122] at 124 [(Ala. 1993)]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable *Page 1078 
prejudice, is a matter within the trial court's discretion."
805 So.2d at 771-72 (footnote omitted).
In determining whether this standard has been met, we examine the factors cited by the circuit court in its order. The factors include the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective jurors's inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about. Tomlin v. State,695 So.2d 157, 170 (Ala.Crim.App. 1996). The Supreme Court inDobyne stated that a prima facie showing of prejudice may be made by trial counsel's assurances that he or she would have used one of their peremptory strikes to remove the challenged juror.
DeBruce's attorney testified that he would have struck P.L. had he known her father was in law enforcement. However, our inquiry does not end there. If this was the case then this claim could easily be proven by an attorney's attestation that he or she would have struck the challenged juror. Once a prima facie case is established the opposing party may rebut that showing by proof that no prejudice occurred. Here, the State rebutted the prima facie showing.
The State thoroughly questioned P.L. and several other jurors who were on DeBruce's jury and affirmatively established that DeBruce was not prejudiced by P.L.'s serving on the jury. P.L. stated that the fact that her father had been in law enforcement did not affect her ability to render an impartial verdict and that she did not discuss the fact that her father had been in law enforcement with any of the other jurors and that it did not affect her decision. Several other jurors who testified at the postconviction hearing verified that P.L. did not discuss her father's law-enforcement background. As the Alabama Supreme Court stated in Reed v. State, 547 So.2d 596, 597 (Ala. 1989):
 "The test for determining whether juror misconduct is prejudicial to the defendant and, thus, warrants a new trial is whether the misconduct might have unlawfully influenced the verdict rendered. Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984); Roan [v. State] 225 Ala. 428, 435, 143 So. 454, 460 (1932); Leith [v. State] 206 Ala. 439, 90 So. 687, 690
(1921). Once the trial court investigates the misconduct and finds, based on competent evidence, the alleged prejudice to be lacking, this Court will not reverse. See Bascom v. State, 344 So.2d 218, 222 (Ala.Crim.App. 1977)."
Moreover, "`[we] grant great deference to the trial judge, who is on the scene and who can best judge the credibility of the participants and determine what actually occurred.' Ex partePressley, 770 So.2d 143, 147 (Ala. 2000)." Dobyne, 805 So.2d at 772. We agree with the circuit court's detailed findings on this issue and have been cited to no reason to disturb those findings.
DeBruce also offers as an aside in his brief on this issue the fact that juror P.M. failed to disclose that her sister had been murdered. The circuit court specifically found, and this finding is supported by the record, that P.M.'s panel was not asked during voir dire if any member of the panel or any of their family members had been victims of a crime. Also, the circuit court specifically found that this juror never discussed this fact with other members of the venire or the jury. This was confirmed by two other jurors who testified at the Rule 32 hearing. As to this claim DeBruce failed to satisfy the second prong in Strickland; i.e., he failed to show any prejudice. *Page 1079 
 B.
DeBruce argues that juror M.F. failed to disclose that her husband had been in law enforcement. When addressing this issue the circuit court made the following findings:
 "DeBruce alleges that juror [M.F.'s] husband was involved in law enforcement and that she improperly failed to answer that question during voir dire. The question asked of [M.F.'s] panel was whether they or a family member `is' in law enforcement. The question did not ask whether anyone was or had been in law enforcement. During the evidentiary hearing, [M.F.] testified that her husband worked as a volunteer, or a reserve county deputy, sometime around 1975. He then worked full time as a county deputy in the Talladega County Sheriff's Department for one year from 1978-79. He also served in the reserves for one year after being a full-time deputy. [M.F.'s] husband was not in law enforcement in 1991 or 1992, which is the information sought to be elicited by the voir dire question. He was not involved in law enforcement at all after 1980.
 "The question itself was not asked in such a way as to elicit information regarding past law enforcement activities. The activities were more than ten years previous to this trial. [M.F.] did not intentionally withhold information."
The circuit court's findings are supported by the record. The question that was asked of M.F.'s panel was "whether they or a family member `is' in law enforcement." As the juror stated during the Rule 32 hearing, her husband had not been in law enforcement for more than 10 years at the time of DeBruce's trial. There was no showing that this juror failed to disclose any information during voir dire.
 C.
DeBruce also argues that juror S.J. failed to disclose that she knew the victim and had had business dealings with him.
The circuit court found that this issue was not sufficiently pleaded and that DeBruce failed to meet his burden of proof. The record shows that juror S.J. had died before the postconviction evidentiary hearing. DeBruce attempted to introduce the testimony of a legal aid attorney who had spoken with S.J. before her death. The State moved that this evidence be excluded. The circuit court excluded this evidence after finding that it was hearsay. There was no legal evidence introduced to support this allegation. We agree with the State's argument during the postconviction hearing that DeBruce's attorney could have obtained an affidavit from S.J. before her death to substantiate this claim. The circuit court correctly found that DeBruce failed to meet his burden of proof concerning this claim.
 II.
DeBruce further argues that he was deprived of an impartial jury because, he says, the jury's verdict was tainted by extraneous information and by unlawful juror contact with a bailiff. Specifically, he argues that there is evidence indicating that members of the jury heard fellow jury members discussing the case before the case was submitted to the jury for its decision. Also, he asserts that one of the bailiffs told the jury that if it did not reach a verdict before the weekend it would have to be sequestered for a three-day holiday weekend.
The circuit court, when addressing this issue, made the following findings:
 "DeBruce argues that his due process rights were violated because jurors considered *Page 1080 
extraneous information in forming their verdict.
 "The first allegation is that jurors considered extraneous information in forming their verdict. From [P.L.'s] testimony, it is clear that no extraneous information was considered by the jury. This claim is alternatively denied on the merits.
 "The second allegation involves inappropriate contact between the bailiff and the jury. [L.D.] the petitioner's own witness, clearly and unequivocally stated that no such conversations occurred. This Court denies relief on the merits of this claim, in addition to holding it procedurally defaulted.[2]
 "Third, and finally, is the allegation that prejudicial conversations about sequestration over the weekend occurred. The record does not reflect any prejudicial conversations. This claim, also, is denied on the merits."
(R. 584.)
Four of the jurors at DeBruce's trial testified at the postconviction hearing. Three said that there had been no discussions about the case outside the jury room. A fourth juror did indicate that while the jury was sequestered she heard comments being made about the case by someone in the hall outside her motel room. However, she could not testify who made the comments and she could not identify the substance of the comments. Nor did any juror testify that the bailiff had had any conversation with him or her concerning reaching a verdict. Clearly, DeBruce failed to meet his burden of proof, and relief was correctly denied on that basis. There is no indication that erroneous information was considered, much less that DeBruce was prejudiced by it.
 III.
DeBruce next argues that he was deprived of the effective assistance of counsel both during his trial and on appeal. He makes many different allegations in support of this contention. Most of these claims were never developed in either the original postconviction petition or the amended petition that contained additions to this specific claim. When reviewing claims of ineffective assistance of counsel, we apply the standard announced by the United States Supreme Court in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. As the United States Supreme Court stated in Strickland:
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged *Page 1081 
action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
466 U.S. at 689, 104 S.Ct. 2052.
Moreover, in Dobyne v. State, 805 So.2d 733 (Ala.Crim.App. 2000), aff'd, 805 So.2d 763 (Ala. 2001), we stated:
 "`[A] finding of no plain error is one factor to consider when assessing the performance of counsel.' Fortenberry [v. State], 659 So.2d 194, 200
(Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995), quoting Hallford [v. State], 629 So.2d 6, 10 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). `"A finding of no manifest injustice under the `plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984)."' Williams v. State, 783 So.2d 108, 133
(Ala.Cr.App. 2000), quoting State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App. 1996). See also Thomas v. State, 766 So.2d 860 (Ala.Cr.App. 1998)."
805 So.2d at 744. See also Lawhorn v. State, 756 So.2d 971,979-80 (Ala.Crim.App. 1999), cert. denied, 531 U.S. 835,121 S.Ct. 93, 148 L.Ed.2d 53 (2000).
The record reflects that DeBruce's family retained Erskine Mathis to represent DeBruce at trial. Mathis had previously represented defendants in 10 or 12 capital cases; no capital defendant represented by Mathis had been sentenced to death. DeBruce makes the following claims about his attorney's performance.[3]
 A.
DeBruce first argues that his trial counsel's performance was deficient because of the low statutory cap on attorney fees for attorneys appointed to represent indigent defendants in Alabama. See § 15-12-21, Ala. Code 1975. He asserts that the statutory cap results in ineffective representation and constitutes an unconstitutional taking of private property.
However, the record in this case discloses that DeBruce's trial attorney was not appointed but was retained by DeBruce's family approximately one month before trial. The attorney who had been appointed by the trial court was allowed to withdraw from the case. DeBruce also obtained the help of another attorney, Bill DelGrosso, one week before trial. Also, the record shows that Mathis represented DeBruce on direct appeal before this Court.[4] DeBruce's trial attorneys were retained, not appointed. The cap on attorney fees set by § 15-12-21, Ala. Code 1975, applies only to appointed counsel and not retained counsel.
However, even had DeBruce's counsel been appointed, we would determine this issue adversely to him. The Alabama Supreme Court has upheld the statutory cap contained in § 15-12-21, Ala. Code 1975, against the claim that it constitutes an unlawful taking of private property and that it renders an attorney's performance deficient. See Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), andSparks v. Parker, *Page 1082 368 So.2d 528 (Ala. 1979).[5] As the Grayson Court stated:
 "These contentions are made on the premise that lawyers will not provide effective assistance unless paid a certain amount of money. But the legal profession requires its members to give their best effort in `advancing the "undivided interests of [their] client[s]".' Polk County v. Dodson, 454 U.S. 312, 318-19, 102 S.Ct. 445, 449-50, 70 L.Ed.2d 509 (1981). This Court, in Sparks v. Parker, 368 So.2d 528, 530 (Ala. 1979), quoted the New Jersey Supreme Court as follows:
 "`We know of no data to support a claim that an assigned attorney fails or shirks in the least the full measure of an attorney's obligations to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and his pride. [State v. Rush, 46 N.J. 399, 405-07, 217 A.2d 441, 444-45 (1966).]'"
Grayson, 479 So.2d at 79-80.
Moreover, this claim was correctly denied because DeBruce offered no specific factual assertions concerning this issue — DeBruce also failed to meet his burden of proof.
 B.
DeBruce argues that trial counsel was ineffective because, he says, counsel failed to investigate the case. This claim consists of many allegations the majority of which were never developed either in the original petition or any of the amendments that were filed. When denying relief on this claim, the circuit court stated:
 "The Court finds that Erskine Mathis looked at a banker's box full of discovery which contained information relative to all five co-defendants. He sifted through the box in order to glean what information would be helpful or relevant to this client, and in doing so performed effectively.
 "DeBruce also claims that Mathis failed to investigate six individuals who were identified as suspects by law enforcement. He fails to meet his burden of proof on this claim. DeBruce did not put forth any evidence regarding this claim at the Rule 32 hearing. DeBruce has pointed to many witnesses who were allegedly not interviewed by Mathis, yet he cannot show prejudice stemming from the failure to conduct those interviews.
 "DeBruce argues ineffectiveness on Mathis's part for failure to secure the testimony of experts. Mathis himself testified that he did not see a reason to pursue a psychological or mental health defense, and he did not observe that DeBruce was particularly ill. These decisions represent strategy on Mathis's part, and are entitled to great deference. DeBruce chastises Mathis for not obtaining a fingerprint expert; yet, DeBruce did so at the Rule 32 hearing, but still did not present testimony in this regard. He has, moreover, failed to plead and prove deficient performance and prejudice stemming from Mathis's failure to retain an investigator, audio/videotape expert, ballistics expert, and the barrage of other experts whom he alleges should have been secured. To the extent that this claim deals with mental health experts and fingerprint experts, this claim is denied on the merits. Relating to all other experts, the claim is denied for failure to meet the burden of proof. *Page 1083 
 "With regard to the `other suspect' information, DeBruce failed to present any evidence at the Rule 32 hearing that would indicate deficient performance and prejudice arising from failing to interview and/or investigate these individuals. This claim is denied for failure to meet the burden of proof.
 "DeBruce raises several claims of failure to adequately prepare and argue motions. Rule 32 counsel asked Mathis briefly about his failure to move for a change of venue. Mathis testified that he believed a motion for a change of venue would have been unsuccessful. Rule 32 counsel produced a scanty amount of media coverage relating to this trial. DeBruce has failed to establish the threshold necessary to show that a change of venue was mandated. Therefore, no deficient performance or prejudice arose from Mathis's failure to move for a change of venue. This claim is denied on the merits. Relating to all other claims of failure to adequately argue motions, DeBruce failed to present any evidence in support of his claims, and therefore has not met the burden of proof allocated to him by Rule 32.3 of the Alabama Rules of Criminal Procedure.
 "DeBruce makes claims regarding the indictment and grand jury. DeBruce presented no evidence, testimony, or even caselaw within his brief supporting his position that the indictment was duplicative and indefinite. He has failed to show deficient performance and prejudice arising therefrom. As argued below, the defendant has no right to be present during the grand jury proceedings. There was no evidence elicited at the Rule 32 hearing that Erskine Mathis knew that Barbara Spencer testified at the grand jury proceedings. No evidence was presented in support of this claim. DeBruce failed to meet his burden of proof.
 "DeBruce finally argues that Mathis should have moved to suppress identification evidence. He presented no evidence in support of his claim that the State used `local fillers' who were familiar to the witnesses, or any other of his claims that the identification procedures were suggestive. He has failed to meet his burden under Strickland and Rule 32.3 of the Alabama Rules of Criminal Procedure."
The circuit court correctly held that DeBruce failed to meet his burden on the majority of his claims. Most were merely statements that were not supported by any specific facts or evidence. For instance, DeBruce argued that Mathis was ineffective because he failed to secure the services of any experts and he moved only that a "juristic expert" be obtained. He contends that Mathis failed to seek experts for ballistic or fingerprint testing.
However, a review of the record on direct appeal shows that counsel filed a great many pretrial motions.[6] He filed a motion requesting funds for a juristic expert and he also filed a motion for funds to secure a ballistic and fingerprint expert. When the motion for a fingerprint expert was discussed at a pretrial hearing, the State conceded that DeBruce's fingerprints were not found in the Auto Zone store and that only Charles Burton's fingerprints had been discovered. Also, the State conceded that no fingerprints had been recovered from the murder weapon. *Page 1084 
With those assurances defense counsel withdrew the motion. DeBruce failed to present any expert witnesses at the Rule 32 hearing who testified about ballistic or fingerprint evidence even though DeBruce obtained the services of a fingerprint expert for the postconviction proceeding. Clearly, DeBruce failed to meet his burden of proof in regard to this claim.
DeBruce also argues that Mathis failed to investigate his background and failed to discover a history of his mental retardation and the fact that he suffered from Crohn's disease — a debilitating disease of the digestive system.[7]
The record on direct appeal shows that Mathis requested a mental evaluation before trial. Mathis testified that the preliminary examination indicated no reason to proceed further with a mental-health defense. Also the record on direct appeal shows that DeBruce's mother, Jessie DeBruce, testified at the penalty phase of DeBruce's trial. She said that DeBruce was the youngest of 11 children and that all 6 brothers of his were either in prison or had been in prison. She said that DeBruce had graduated from high school and had attended college at the University of Alabama at Birmingham ("UAB").[8]
Also, Mathis testified at the postconviction hearing that during trial he had no reason to believe that DeBruce was ill. The record also shows that DeBruce participated in his defense and made a statement to the jury during the penalty phase, and that he also testified concerning the voluntariness of his statement when the trial court was ruling on the motion to suppress.
Dr. David Williamson, a neuropsychologist, testified as a witness for DeBruce at the Rule 32 evidentiary hearing. He said that according to the tests he had conducted DeBruce's verbal IQ was 79 and that he had borderline intelligence functioning. Dr. Jackson Kuan, a gastroenterologist, testified that DeBruce had Crohn's disease; he characterized the disease as a debilitating disorder. However, DeBruce was not diagnosed with the disease until 1993 — two years after he was tried and convicted of capital murder.
To rebut DeBruce's evidence, the State offered the testimony of its own expert at the postconviction hearing. Dr. Glen King, a forensic psychologist, testified that he had evaluated DeBruce and had conducted several IQ tests and determined that DeBruce's verbal IQ was 84. He said that it was his opinion that DeBruce was not mentally retarded but was malingering.
We have stated the following about an attorney's duty to investigate:
 "While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, `this duty only requires a reasonable
investigation.' Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland [v. Washington], 466 U.S. [668] at 691, 104 S.Ct. at 2066 [(1984)]; Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990). Counsel's obligation is to conduct a `substantial investigation into each of the plausible lines of defense.' Strickland, *Page 1085 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added [in Jones]). `A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.' Id., 466 U.S. at 686, 104 S.Ct. at 2063.
 "`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.'
"Id., 466 U.S. at 691, 104 S.Ct. at 2066."
Jones v. State, 753 So.2d 1174, 1191 (Ala.Crim.App. 1999).
 "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions."
Strickland, 466 U.S. at 692, 104 S.Ct. 2052. "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford v. State,629 So.2d 6, 9 (Ala.Crim.App. 1992), cert. denied, 511 U.S. 1100,114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
DeBruce was represented by two attorneys at trial; however, only one attorney testified at the postconviction hearing. DelGrosso did not testify or execute an affidavit for purposes of the postconviction proceedings. We do not know the extent of his involvement in the case or what investigation he conducted in preparation for trial. Neither was Mathis questioned about what investigations that he and DelGrosso conducted.
Given the circumstances presented in this case and the conflicting evidence as to DeBruce's mental health, we cannot say that counsel failed to conduct a reasonable investigation.
 C.
DeBruce next argues that his trial counsel's performance was deficient in failing to seek a continuance.
During the postconviction hearing, DeBruce never asked Mathis why he did not request a continuance after he was retained one month before trial. However, during cross-examination Mathis said that he had spoken with the district attorney and the circuit judge when he accepted the case and that he was told, "Look Erskine, we would love for you to take the case. We would like for you to practice law down here. That's wonderful. Come on. But don't expect this case to be continued. It's set for trial on such and such a date. The other lawyer is ready to try it. If you take the case, you're going to try it on that day." (R. 172.) This is supported by the record. As the Alabama Supreme Court noted on DeBruce's direct appeal, "There was some discussion about whether the defendant wanted to do some independent testing and the court noted that the case had already been continued once at the defendant's request and was set for trial on a specific date. Defendant's counsel stated that he did not want to delay the trial." DeBruce, *Page 1086 
651 So.2d at 626 n. 2. From the record of the postconviction hearing and the direct appeal transcript it appears that DeBruce had every reason to believe that the circuit court would not grant a continuance. The circuit court, when denying relief on this claim, stated:
 "While there were witnesses that could have been interviewed, or still more documents that could have been examined, there was no showing that counsel did not perform effectively under constitutional standards in his representation of DeBruce. The Court denies relief on the merits of this claim."
Our review of the transcript of the direct appeal shows that counsel did an admirable job of defending DeBruce, given the horrific facts of this case. Mathis and DelGrosso, both well-trained and experienced death-penalty attorneys, conducted a vigorous defense. DeBruce failed to meet the Strickland test in regard to this claim.
 D.
DeBruce argues that counsel was deficient during jury selection. He makes several different allegations to support this contention. However, few of the allegations were developed at the evidentiary hearing. Mathis was questioned about why he did not ask during voir dire whether any of the veniremembers or their family members had been the victims of a crime. It appears that he failed to ask one panel this question. Mathis admitted that he always asked that question and that he must have inadvertently failed to ask that panel that question. However, DeBruce failed to show any prejudice. The juror who had in fact been a victim of a crime was questioned extensively at the postconviction hearing and said that the fact that her sister had been murdered did not affect her decision and that she had not discussed her sister with any of the other jurors. Two other jurors testified at the evidentiary hearing that they were unaware that one juror had a sibling who had been murdered. "An accused is not entitled to error-free counsel. Graham v. State, 403 So.2d 275 (Ala.Cr.App. 1980), cert. quashed, 403 So.2d 286 (Ala. 1981)." Phelps v.State, 439 So.2d 727, 735 (Ala.Crim.App. 1983). "An accused is entitled `"not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance."'" Dobyne v. State, 805 So.2d at 758 (quotingThompson v. State, 615 So.2d 129, 134 (Ala.Crim.App. 1992), quoting in turn Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977)).
 "`Even if counsel committed what appears in retrospect to have been a tactical error, that does not automatically mean that petitioner did not receive an adequate defense in the context of the constitutional right to counsel.' Ex parte Lawley, 512 So.2d 1370 (Ala. 1987). `"An accused is not entitled to error-free counsel."' Stringfellow [v. State], 485 So.2d [1238] at 1243 [(Ala.Crim.App. 1986)]."
Hutchins v. State, 568 So.2d 395, 397 (Ala.Crim.App. 1990).
 E.
DeBruce argues that Mathis was ineffective for failing to adequately impeach his codefendant, Lujuan McCants. Specifically, he contends that counsel failed to question McCants about a prior statement he had made to police that was inconsistent with his trial testimony. The codefendant testified at trial that DeBruce was the shooter in the killing. However, McCants had made a pretrial statement that was inconsistent with his trial testimony. In his pretrial statement he said that *Page 1087 
he did not know who shot the victim. There were no inconsistent statements about DeBruce's involvement in the robbery/murder — only inconsistencies about the extent of his involvement.
The circuit court, when denying relief on this issue, stated:
 "The Court finds that, even though Erskine Mathis did not use the videotape to impeach McCants, in light of the evidence against DeBruce, this was not prejudicial. Further, regardless of whether DeBruce was the actual shooter, the theory of accomplice liability would have led to his prosecution for capital murder, and would have enabled the jury to reach the same verdict. Charles Burton was not the shooter, by all accounts; yet, he received a death sentence for his participation. There is no likelihood that the result of the trial would have been different. This claim is denied on the merits."
Mathis testified at the postconviction hearing that he was not aware of the existence of any pretrial statements by McCants. However, the circuit court, in its detailed order, made the following finding as it related to DeBruce's alleged discovery violations:
 "The Court finds that Erskine Mathis, contrary to his recollection, viewed the videotape in advance of trial. The State marked for identification two notes taken from the District Attorney's files, created by Surrett and in his own handwriting, where he made notes memorializing the occasion and noting who was present, as was his practice in every case."
(R. 600.) Mathis was aware of the existence of the tape and of McCants's prior statement. When Mathis cross-examined McCants he focused on McCants's motivation to lie about DeBruce's involvement in the robbery/murder and on the fact that he had been offered life imprisonment in exchange for his testimony, and he attempted to impeach McCants with evidence that McCants had told two individuals that he had committed the murder. Mathis then offered the testimony of K.D. — DeBruce's 16-year-old niece. K.D. testified that McCants told her and Lisa Taylor that he had killed a man because the man was crippled and he could not get down on the floor. (Record on direct appeal, p. 951.) Mathis did impeach McCants. However, the evidence against DeBruce was overwhelming — numerous witnesses testified and detailed DeBruce's involvement in the robbery/murder. DeBruce has failed to show how Mathis's performance was deficient.
 F.
DeBruce argues that his counsel was ineffective for arguing as a theory of defense that DeBruce was not the shooter and should not be convicted of capital murder.
The circuit court made the following findings:
 "Robert Rumsey, the Talladega District Attorney who tried the case, testified that, because of Mathis's performance in court, he questioned whether he would get a conviction for capital murder. In fact, he worried that Mathis had done such a good job blurring the line between felony murder and capital murder that he might end up getting only a felony murder conviction.
 "The Court finds that Mathis performed effectively in developing and presenting the defense's theory of the case. This claim is denied on the merits."
"This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's *Page 1088 
actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So.2d at 9.
We have reviewed the record of DeBruce's trial, and we conclude that Mathis did an admirable job of defending DeBruce and placing the blame for the shooting on McCants. However, the jury chose to believe the State's rendition of the facts. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689,104 S.Ct. 2052. The circuit court correctly found that Mathis's defense was reasonable, given the facts of the case.
 G.
DeBruce makes other claims concerning his counsel's performance in the guilt phase of the capital proceedings; however, he failed to present any evidence in support of the remaining contentions. As the circuit court stated in its order — DeBruce failed to meet his burden of proof.
 H.
DeBruce also argues that his counsel was ineffective in the penalty phase for failing to investigate, for failing to make numerous objections to the admission of alleged illegal evidence, and for failing to object to alleged prosecutorial misconduct.
The circuit court made the following findings of fact in regard to this issue:
 "A. Claim of Failure to Investigate and Present mitigation.
 During Rule 32 proceedings, the focus is not on whether DeBruce suffers from Crohn's disease or brain damage; rather, the focus is on whether Mathis was ineffective for failing to pursue these matters.
 "Regarding family members who could have been called to testify, this claim is denied on the merits. At the Rule 32 hearing, DeBruce presented the testimony of two family members, both of whom were incarcerated at the time. Notably, DeBruce did not question Mathis about why he did not present the testimony of DeBruce's convicted relatives during the trial. DeBruce has not established deficient performance or prejudice arising therefrom.
 "DeBruce also presented the testimony of two mental health experts, Dr. David Williamson and Dr. Catherine Boyer. Dr. Williamson is not a certified forensic psychologist (Rule 32 vol. II R. 29) and has never been accepted as an expert in court (id. at 31). The Court finds that trial counsel considered then rejected a mental health defense at trial. This was a strategic decision, and was not deficient. Moreover, DeBruce's experts' opinions have been rebutted by the State, through the testimony of Dr. Glen King. Dr. King testified that DeBruce suffered from no serious mental illness or mental defect. (Rule 32 vol. II R. 231). He also believed that DeBruce was malingering, or `faking' psychological and psychiatric symptoms. (Id. at 237). Dr. King did not conduct a neuropsychological screening because he did not see any need for it. (Id. at 243). Hence, DeBruce also cannot meet the prejudice prong of Strickland. This claim is denied on the merits.
 "With regard to his physical condition, Mathis stated that DeBruce did not appear to be in pain during trial. His performance was not deficient. DeBruce has also failed to establish prejudice. This claim is denied on the merits.
 "B. Claim of Failure to Investigate and Challenge Aggravating Circumstances *Page 1089 
 "DeBruce claims that Mathis failed to challenge the aggravating circumstances relied upon by the State. The basis of his argument is the Jefferson County conviction. Mathis was not ineffective for failing to challenge this conviction. The proper forum for such an attack is a separate Rule 32 petition directed at the prior conviction and filed in Jefferson County, where the prior conviction took place. Young v. State, 600 So.2d 1073, 1075 (Ala.Crim.App. 1992); Bryant v. State, 565 So.2d 290 (Ala.Crim.App. 1990). Mathis would not have been able to challenge the conviction in a Talladega County Court. The same is true inasmuch as DeBruce makes claims against Anthony Falletta for ineffective assistance of counsel. These claims are denied on the merits.
 "C. Claim of Inadequate Opening and Closing Statements
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. As such, he has failed to meet the burden of proof place on him by Rule 32.3 of the Alabama Rules of Criminal Procedure. This Court should deny relief on this claim.
 "D. Claim of Failure to Object to Trial Court's Findings
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. As such, he has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure, and the Court denied relief.
 "E. Claim of Failure to Object to Prosecutorial Misconduct
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. As such, he has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure. The Court denies relief on this basis.
 "F. Claim of Failure to Object to Prejudicial Outbursts
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. DeBruce has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure, and this Court hereby denies relief on that ground.
 "G. Claim of Failure to Object to Mental Health Evaluation
 "Mathis testified that he did not see a reason to pursue the mental health defense. Yet, he still requested an examination, and was satisfied with the results. Mathis considered this line of defense, then rejected it. This was a strategic decision by Mathis, and is entitled to deference. The Court denies relief on the merits of this claim.
"H. Claim of Failure to Object to Jury Instructions
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. The Court therefore denies relief on this claim because he has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure.
"I. Claim of Failure to Argue Disproportionality
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the *Page 1090 
opportunity to question him about this claim. As such, the Court denies relief because he failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure.
 "J. Claim of Failure to Argue Unconstitutionality of Electrocution
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. As such, the Court denies relief because he has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure.
 "K. Claim of Failure to Argue Discriminatory Sentence
 "DeBruce failed to present any evidence on this claim. He presented Erskine Mathis as a witness, and had the opportunity to question him about this claim. As such, he has failed to meet the burden of proof placed on him by Rule 32.3 of the Alabama Rules of Criminal Procedure. The Court denies relief for failure to meet the burden of proof on this claim.
"L. Cumulative Effect Argument
 "DeBruce has failed to demonstrate any one particular error, much less the aggregate effect of such alleged errors. This claim is denied on the merits."
(R. 592-97.)
As we stated in Daniels v. State, 650 So.2d 544, 555
(Ala.Crim.App. 1994), cert. denied, 514 U.S. 1024,115 S.Ct. 1375, 131 L.Ed.2d 230 (1995):
 "`"[E]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made."' Stringfellow v. State, 485 So.2d 1238, 1243
(Ala.Cr.App. 1986). `Even though there were several instances where counsel could have objected, "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel." Ex parte Lawley, 512 So.2d 1370, 1373 (Ala. 1987).' O'Neil v. State, 605 So.2d 1247, 1250 (Ala.Cr.App. 1992). As this Court observed in Graham v. State, 593 So.2d 162, 166 (Ala.Cr.App. 1991):
 "`The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards.'"
Here, DeBruce chose not to pursue the claims concerning ineffective assistance of counsel for counsel's alleged failure to object to the introduction of certain evidence at the penalty phase. Claims C through F and H through L were correctly denied because DeBruce failed to present any evidence in support of these allegations. Therefore, according to Rule 32.3, Ala.R.Crim.P., DeBruce failed to meet his burden of proof.
DeBruce argues that counsel's performance at the penalty phase was deficient for failing to uncover and present evidence of his low intelligence, the fact that he had Crohn's disease, and the fact that he had been reared in a high crime area.
DeBruce was sentenced to death based on the application of two aggravating circumstances — (1) a previous conviction of a felony involving the use or threat of violence to the person, §13A-5-49(2), Ala. Code 1975, and (2) the fact that the murder occurred during the course of a robbery, § 13A-5-49(4), Ala. Code 1975. The trial court determined that one statutory mitigating circumstance was present — the defendant's age at the time of the murder. *Page 1091 
See § 13A-5-51(7), Ala. Code 1975. The trial court found no nonstatutory mitigating evidence. We also note that when this Court reviewed this case on direct appeal we made the following observation in our opinion:
 "`Although we have reviewed "worse" crimes of robbery-murder, the apparent cold-blooded, senseless, and unmerciful manner in which the defendant executed this crime impresses this Court as it did the trial judge. Other than the general arguments for not imposing a punishment of death in any case, we find no reason to spare the defendant's life."
DeBruce, 651 So.2d at 623 (quoting Kuenzel v. State,577 So.2d 474, 530 (Ala.Crim.App. 1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197
(1991)).
In Daniels, we stated the following concerning the standard for reviewing allegations of ineffective assistance of counsel in the penalty phase of a capital trial:
 "`[W]hile "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.'"
 White v. Singletary, 972 F.2d 1218, 1224 (11th Cir. 1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
 "`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice
by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'"
 Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir. 1988)."
650 So.2d at 568-69.
Here, the record on direct appeal shows that DeBruce's mother testified in his behalf at the penalty phase. Jessie DeBruce testified that DeBruce was the youngest of 11 children and that all 6 of his brothers were either in prison or had been in prison. She said that DeBruce had graduated from high school and had attended college at UAB. Jessie DeBruce further testified that DeBruce had one child. *Page 1092 
Also, evidence of DeBruce's mental condition was not presented because a preliminary examination had been conducted before trial, and as a result Mathis felt there was no reason to proceed with a mental-health defense. Mathis testified that he had no reason to doubt DeBruce's mental competency after reviewing the preliminary report.
Moreover, the presentence report reflects that DeBruce reported to the probation officer the following:
 "Dedrick Anthony DeBruce is a twenty (20) year old, black male. He was born in Sumter County, Alabama and his family moved to Birmingham in 1973. DeBruce was raised in the Birmingham area by both of his true parents. He reported a good relationship with both of his parents and his numerous siblings. There were no significant problems noted during his formative years.
". . . .
 "DeBruce claims to have attended high school at Ramsey, in Birmingham, Alabama and was in the `Gifted' program. The Probation Office report from Birmingham indicated that DeBruce finished high school at Hayes High School. DeBruce then attended the University of Alabama in Birmingham for one semester. He has had no other formal education."
We find significant the above comments that DeBruce made to the probation officer who prepared the presentence report. DeBruce argues that his school records would have shown that he failed to graduate from high school. DeBruce, in effect, argues that Mathis should have disregarded DeBruce's statements and his mother's statements and checked the school records for himself. We do not agree.
The Florida Supreme Court, reviewing a claim that counsel's performance was deficient for failing to present mitigation evidence of the defendant's abusive childhood, stated:
 "Under Strickland, `counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' Strickland, 466 U.S. at 691, 104 S.Ct. 2052. However, `[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.' Id. While trial counsel has a duty to investigate, `when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.' Id.; see also Rose v. State, 617 So.2d 291, 294-95 (Fla. 1993) (trial counsel was not ineffective for failing to call family members where defendant told counsel that he had not had contact with his family for a number of years and that his family's testimony would not be helpful).
 "In Stewart v. State, 801 So.2d 59 (Fla. 2001), this Court rejected a claim that trial counsel was deficient for failing to investigate and present evidence of the defendant's alleged childhood abuse by his stepfather. As in this case, Stewart generally described a happy childhood and never informed defense counsel, or the defense psychiatrist, about any abuse he suffered. Further, trial counsel indicated that he personally interviewed Stewart's stepsisters, but neither mentioned that Stewart was abused. Similarly, Stewart's stepfather never led trial counsel to believe anything other than that he was a loving and caring father to Stewart. Accordingly, this Court concluded, `by failing to communicate to defense counsel (or the defense psychiatrist) regarding any instances *Page 1093 
of childhood abuse, [the appellant] may not now complain that trial counsel's failure to pursue such mitigation was unreasonable.' Id. at 67 (citing Cherry v. State, 781 So.2d 1040, 1050 (Fla. 2000)). Stewart would appear to dictate the same result in this case."
Marshall v. State, 854 So.2d 1235, 1247 (Fla. 2003).
Given DeBruce's mother testimony, DeBruce's own comments, and the conflicting expert testimony about DeBruce's mental health, we hold that Mathis was not ineffective for failing to investigate further into DeBruce's mental health. Also, the United State Supreme Court in Wiggins v. Smith, 539 U.S. 510,123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), when reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial, stated:
 "In Strickland, we made clear that, to establish prejudice, a `defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."
539 U.S. at 534, 123 S.Ct. at 2542.
As directed by the Supreme Court in Wiggins, we have reweighed the omitted mitigating evidence — evidence indicating that DeBruce had Crohn's disease and conflicting evidence of DeBruce's mental health — against the aggravating circumstances that were proven in this case — the fact that the murder was committed during a robbery and the fact that DeBruce had previously been convicted of a crime of violence. Given the aggravating circumstances presented here and the cold blooded manner in which the killing occurred, we believe that DeBruce's death sentence was appropriate.
Mathis's strategy in the penalty phase was to beg for mercy. DeBruce's mother testified and pleaded for her son's life, and DeBruce made a statement to the jury saying that he was sorry and begging the jury to spare his life. This strategy, given the facts of this case, was not deficient. Cf. Hallford v. State,629 So.2d 6 (Ala.Crim.App. 1992), cert. denied, 511 U.S. 1100,114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
 I.
DeBruce also argues that his counsel's performance on direct appeal was ineffective. The circuit court, when denying relief on this claim, made the following findings:
 "The Court finds that Erskine Mathis, signed briefs on appeal that were written by the Capital Resource Center, Bryan Stevenson's anti-death penalty organization, now known as the Equal Justice Initiative of Alabama, provided effective assistance of appellate counsel."
We note that no evidence was introduced to support DeBruce's contention.
A defendant has the right to the effective assistance of counsel in his appeal to this Court. See Cochran v. State,548 So.2d 1062 (Ala.Crim.App.), cert. denied, 493 U.S. 900,110 S.Ct. 259, 107 L.Ed.2d 208 (1989). DeBruce argues on appeal that his appellate counsel should have raised an additional 33 issues before this Court. Mathis represented DeBruce on appeal and signed the brief prepared by the anti-death-penalty organization known as the Equal Justice Initiative. The brief presented 13 issues, and this Court issued a very lengthy opinion addressing those issues. "`[W]e emphasize that the right to effective assistance of appellate counsel *Page 1094 
does not require an attorney to advance every conceivable argument on appeal which the trial record supports.' Gray v.Greer, 778 F.2d 350 at 353 (7th Cir. 1985) (emphasis added [inCochran]), citing Evitts v. Lucey, 469 U.S. 387,105 S.Ct. 830, 83 L.Ed.2d 821 (1985)." Cochran, 548 So.2d at 1069-70.
 "`[E]xperienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed.'"
Boyd v. State, 746 So.2d 364, 403 (Ala.Crim.App. 1999), quotingJones v. Barnes, 463 U.S. 745, 746, 103 S.Ct. 3308,77 L.Ed.2d 987 (1983). We agree with the circuit court that appellate counsel's performance was not deficient.
 IV.
DeBruce argues that the State violated Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose certain alleged exculpatory evidence. He presents a laundry list of items that he argues were not disclosed to DeBruce before trial.
Initially, we observe that the only issue raised in the timely filed Rule 32 petition concerning any possible discovery violation was that the prosecutor committed misconduct by failing to disclose the defendant's pretrial statement. However, in the second amended petition filed on June 14, 1999, more than two years after this Court issued the certificate of judgment.[9] DeBruce raised a multitude of allegations concerning alleged Brady violations. These claims would be timely if they related back to claims raised in the timely filed petition; however, the claims raised in the second amended petition did not relate back to any claims raised in the original petition. See Charest v. State, 854 So.2d 1102 (Ala.Crim.App. 2002).
The State did not argue in its motion to dismiss that this claim was barred because it was not raised in a timely filed postconviction petition. See Rule 32.2(c), Ala.R.Crim.P. However, the State did argue that the Brady claims were procedurally barred because they could have been raised at trial or on appeal but were not. Rule 32.2(a)(3) and 32.3(a)(5), Ala.R.Crim.P. We agree. We have often stated that Brady claims are subject to the procedural bars of Rule 32.2(a)(3) and 32.2(a)(5), Ala.R.Crim.P. See Williams v. State, 782 So.2d 811
(Ala.Crim.App. 2000), cert. denied, 782 So.2d 842 (Ala. 2000);Holladay v. State, 629 So.2d 673 (Ala.Crim.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); and Gibson v. State, 580 So.2d 38 (Ala.Crim.App. 1990). DeBruce does not argue that these claims were based on newly discovered evidence.
 V.
DeBruce argues that the circuit court denied him a full and fair postconviction hearing. He lists several different grounds in support of this contention.
 A.
DeBruce first argues that the circuit court denied him a fair hearing when the court denied him funds to hire experts *Page 1095 
to testify at the postconviction hearing. The circuit court stated the following in regard to this issue:
 "The Due Process Clause does not require a trial court to approve funds to hire experts to testify at a [post-conviction] hearing. Holladay v. State, 629 So.2d 673, 688 (Ala.Crim.App. 1992), citing Hubbard v. State, 584 So.2d 895, 900-01 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992). Clearly this Court properly followed the law in denying DeBruce's motion for funds.
 "DeBruce is represented by six attorneys. Additionally, local counsel was appointed. As the Court is well aware, various lawyers and/or assistants to lawyers shuffled in and out of the courtroom during the Rule 32 proceedings. DeBruce had the assistance of many individuals, who were capable of presenting several witnesses and documents in support of their myriad claims. This claim is denied on the merits."
(C.R. 603-04).
The circuit court's findings are correct. As this Court inHubbard v. State, 584 So.2d 895 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992):
 "The appellant next contends that the trial court erred in denying his request for State funds to hire experts to testify at the Rule 20 [now Rule 32] hearing. The appellant sought to hire a psychiatrist, toxicologists and experts in police procedure. We find that the appellant received a full and fair hearing. The evidence the appellant sought to introduce through these experts was either already before the court in another form or was not necessary to the court's determination. Furthermore, the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve such funds. See generally, Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (no requirement that indigent defendants be appointed counsel in post-conviction proceedings); Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (same); Ex parte Cox, 451 So.2d 235 (Ala. 1983) (same); Hobson v. State, 425 So.2d 511 (Ala.Crim.App. 1982) (same). The appellant has failed to show how the denial of the request prejudiced his case in any way."
584 So.2d at 900-01.
DeBruce presented the testimony of four experts at the postconviction hearing. DeBruce called Dr. Jackson Kuan, a gastroenterologist; Dr. David Williamson, a neuropsychologist; Dr. Kevin Fitzpatrick, a sociologist; and Dr. Catherine L. Boyer, a clinical and forensic psychologist. DeBruce has failed to show how the denial of funds for more experts prejudiced him. The circuit court committed no error in denying DeBruce's motion for funds for an expert to testify at the postconviction proceeding.
 B.
DeBruce also argues that the circuit court erred in not ordering the district attorney's office to turn over numerous items in its files that the State claimed were work product and therefore privileged. The circuit court stated the following concerning this contention:
 "DeBruce argues that the Court erred by not providing him with privileged work product material from the District Attorney's files. The Court reviewed the work product material in camera and made a finding that there was nothing exculpatory contained within the material, and that it consisted of trial preparation, trial strategy, and trial organization notes. This ruling was correct, *Page 1096 
and the Court denies relief on the merits of this claim."
There is very little in the record addressing this issue; therefore, we must give deference to the circuit court's ruling. There is absolutely no evidence in the record indicating that the circuit court erred in the above ruling.
 C.
DeBruce argues that the circuit court erred in not appointing a special prosecutor in the case because the Talladega County District Attorney, Jonathan Adams, had initially been appointed to represent DeBruce in the preliminary stages of his case.[10]
The record reflects that in December 1999 DeBruce filed a motion for appointment of a special prosecutor because of the alleged conflict of interest. He asserted that the district attorney had been appointed to represent him during the preliminary stage of his capital prosecution and because of that representation he obtained confidential and privileged information that could be used against DeBruce during the postconviction proceedings.
The attorney general's office represented the State in the postconviction proceedings. The record shows that in response to this motion, the circuit court informed the assistant attorney general handling the case that she was to have no contact with the district attorney and that she should detail any previous discussions that she had had with the district attorney. In response to that order, the assistant attorney general stated that the only contact her office had had with Adams was to obtain the files of the district attorney office related to the case.
The record shows that little action was taken in the case from the time the motion for appointment of a special prosecutor was filed until after District Attorney Adams left office. The supplemental record contains a copy of a letter from the assistant attorney general to Judge Fielding. The letter states in part, "When we met for the last status conference in the above case, I believe that we were waiting to proceed until Mr. Adams was no longer in office. It is my understanding that Mr. Adams has now left the District Attorney's office."
The record contains no evidence indicating that DeBruce was prejudiced by the circuit court's failure to appoint a special prosecutor in this case.
 D.
DeBruce also argues that he was denied a fair postconviction hearing because the circuit court excluded the testimony of S.J., the husband of a juror; Adrienne Holder, a legal-aid attorney; and Dr. Kevin Fitzpatrick, a sociologist.
The circuit court stated the following regarding this issue:
 "[S.J.] is the husband of Susie [J.], a sworn juror in DeBruce's case. Ms. [J.] is deceased. DeBruce sought to introduce Mr. [J.'s] and Ms. Holder's testimony, based entirely on hearsay from Susie [J.], in an attempt to support a claim of juror misconduct. The Court properly denied this request. The proffered testimony does not fit into a hearsay exception under Rule 804 of the Alabama Rules of Evidence. To have a statement admitted under Rule 804, a proponent of a hearsay statement must do more than simply show that the declarant *Page 1097 
is unavailable; he must additionally meet one of the requirements of Rule 804(b). Ala.R.Evid. 804(b). DeBruce has failed to even assert a basis for admissibility of Ms. [J.'s] hearsay statements in his brief. He merely argues error, with no supporting authority. He has failed to properly present this claim to the Court. It further fails on the merits, based on the record of the hearing. This claim is denied.
 "DeBruce also argues that exclusion of Dr. Kevin Fitzpatrick was error. Dr. Fitzpatrick would have testified about the nature of the neighborhoods in which DeBruce lived as a child. DeBruce presented family members who testified about violence that they, including DeBruce, witnesses in the neighborhood. The Court received a clear picture of the environment in which DeBruce was reared. Further, Fitzpatrick never interviewed DeBruce. He would have spoken in hypotheticals. DeBruce relies on the United States Supreme Court case of Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), as support for the proposition that the Court relied upon evidence from sociologists, thus, this Court was in error to decline to hear such testimony. The Court finds Eddings easily distinguishable and unsupportive of his position. This claim is denied."
We agree with the circuit court's findings and adopt them as our own.
Clearly, the evidence of what the now-deceased juror told someone else is a classic example of hearsay. The substance of the deceased juror's statement was offered to prove the truth of the matter asserted. The circuit court correctly ruled that this evidence was inadmissible hearsay. See Rule 804, Ala.R.Evid.
DeBruce also attempted to introduce the testimony of a sociologist concerning what affect living in a high crime area has on an individual. DeBruce argued that the sociologist's testimony would have established a nonstatutory mitigating circumstance that, he argues, his attorney failed to present.
Alabama has never specifically addressed whether a sociologist may properly testify to establish mitigating evidence. Section13A-5-52, Ala. Code 1975, addresses nonstatutory mitigating evidence and states:
 "In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."
"The Eighth Amendment requires an individualized sentencing determination in a death penalty case." Sneed v. State,783 So.2d 841, 853 (Ala.Crim.App. 1999), rev'd on other grounds,783 So.2d 863 (2000), citing Stringer v. Black, 503 U.S. 222,112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), and Lockett v. Ohio,438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Allowing a sociologist to testify concerning the general affect of environmental conditions violates the right to an individualized sentencing determination.
The North Carolina Supreme Court in State v. Taylor,354 N.C. 28, 550 S.E.2d 141 (2001), cert. denied, 535 U.S. 934,122 S.Ct. 1312, 152 L.Ed.2d 221 (2002), had occasion to address whether the circuit court properly excluded a sociologist's testimony when that testimony was offered to *Page 1098 
prove mitigation. The Taylor court stated:
 "While [the sociologist] was clearly qualified to give his opinion as to the possible cultural affects living in a drug-infested environment would have had on defendant, he was not qualified to give what is in essence a medical opinion as to any possible mental defect, as his training and experience were insufficient to allow the court to admit this portion of his testimony. The trial judge properly exercised his discretion in excluding testimony that was unreliable for its intended purpose. Although the courts have often properly allowed the testimony of psychiatrists and psychologists to address mitigating circumstances focused on a particular defendant's mental state, we do not believe it proper to allow a sociologist who studies the functions and patterns of groups to give this type of testimony. Indeed, the above portions of testimony could have applied to any family member or associate of defendant who grew up in the same environment. The primary purpose of mitigating circumstances is, as defendant notes, to treat the capital defendant with `that degree of respect due the uniqueness of the individual.' Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (1978). The witness' testimony lacked the requisite uniqueness regarding this defendant, and the trial court did not err in excluding the testimony."
354 N.C. at 43, 550 S.E.2d at 152. See also State v. Rose,120 N.J. 61, 65, 576 A.2d 235 (1990).
The circuit court correctly excluded the sociologist's testimony — it was not relevant to the issue at hand.
 E.
DeBruce argues that he was denied a fair hearing because the State was allowed to call two surprise witnesses who were not listed on the State's witness list.
The circuit court found that these witnesses were called as rebuttal witnesses. The State indicated in its witness list that it would call rebuttal witnesses. We have stated:
 "`The admission of rebuttal evidence is within the discretion of the trial judge. Crow v. State, 365 So.2d 1254 (Ala.Cr.App. 1978), cert. denied, 365 So.2d 1256 (Ala. 1979). "The State may, in the discretion of the trial court, introduce in rebuttal any competent evidence which explains or is a direct reply to or a contradiction of material evidence by the defendant." Sprinkle v. State, 368 So.2d 554
(Ala.Cr.App. 1978), writ quashed, 368 So.2d 565
(Ala. 1979) (emphasis added).'"
Bishop v. State, 656 So.2d 394, 397 (Ala.Crim.App. 1994), quoting Norris v. State, 429 So.2d 649, 650 (Ala.Crim.App. 1982).
The circuit court committed no error in allowing the State to call two rebuttal witnesses.
 F.
DeBruce argues that the circuit court erred in adopting intoto the State's proposed order denying relief. DeBruce's entire argument on this issue consists of the following:
 "The Rule 32 court also erred by signing the state's proposed order in its entirety. . . . Mr. DeBruce was entitled to a full and fair hearing before an impartial tribunal. By signing the state's order without even changing a comma, the court violated Mr. DeBruce's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United *Page 1099 
States Constitution, the Alabama Constitution, and Alabama law."
(DeBruce's brief to this Court, p. 99).
As we stated in Holladay v. State, 629 So.2d 673
(Ala.Crim.App. 1992), cert. denied, 510 U.S. 1171,114 S.Ct. 1208, 127 L.Ed.2d 555 (1994):
 "`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990).'"
629 So.2d at 687, quoting Wright v. State, 593 So.2d 111,117-18 (Ala.Crim.App. 1991), cert. denied, 506 U.S. 844,113 S.Ct. 132, 121 L.Ed.2d 86 (1992).
Here, the circuit court's findings and conclusions of law are supported by the record of the hearing and the exhibits that were filed with the postconviction petition. The circuit court's findings are not clearly erroneous.
 VI.
DeBruce raises several other issues in his brief to this Court. The circuit court determined that those issues were procedurally barred under Rules 32.2(a)(3) and 32.2(a)(5), Ala.R.Crim.P., because they could have been raised at trial or on appeal but were not. We agree. The following issues were correctly determined to be procedurally barred in this postconviction action:
 A. Whether the prosecutor violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
 B. Whether DeBruce was deprived of a fair jury when the trial court failed to strike for cause certain jurors who knew the victim.
 C. Whether the trial court failed to suppress his involuntary statement.
 D. Whether the trial court erred in allowing illegally seized evidence to be introduced.
E. Whether the search warrant was invalid.
 F. Whether the prosecutor committed misconduct throughout the trial.
 G. Whether DeBruce's death sentence was improper because it was based on the application of an erroneous aggravating circumstance.
 H. Whether DeBruce was convicted based solely on the testimony of an accomplice.
 I. Whether there was discrimination in the selection of the grand jury.
J. Whether the defense had adequate time to prepare.
 K. Whether there was sufficient evidence to convict DeBruce of capital murder.
 L. Whether the trial court erroneously denied discovery concerning the composition of the grand juries.
M. Whether the record on appeal was incomplete.
N. Whether the trial court should have changed venue.
 O. Whether death by electrocution is cruel and unusual punishment.
 P. Whether the cumulative effect of the errors during trial denied DeBruce a fair trial. *Page 1100 
Additionally, issues A, E, and F were procedurally barred because they were addressed by this Court on direct appeal. See Rule 32.2(a)(4), Ala.R.Crim.P.
 VII.
The circuit court also found that DeBruce's argument concerning his competency to stand trial was procedurally barred because it could have been raised at trial or on appeal but was not. DeBruce specifically argued in his postconviction petition that he was mentally and/or physically incompetent to stand trial and the trial court erred in not holding a competency hearing. The United States Supreme Court held in Pate v. Robinson, 383 U.S. 375,86 S.Ct. 836, 15 L.Ed.2d 815 (1966), that a mentally incompetent individual could not be tried and convicted. Section 15-16-21, Ala. Code 1975, provides that if the trial court has reason to doubt an individual's sanity then the court must suspend the trial proceedings and inquire into the "fact of his sanity." InNicks v. State, 783 So.2d 895 (Ala.Crim.App. 1999), cert. quashed, 783 So.2d 926 (Ala. 2000), we recognized that a claim that a defendant was tried while mentally incompetent could not be subject to waiver in a collateral proceeding.
DeBruce's argument relates to his physical competency — and not his mental competency — to stand trial. Physical incompetence and mental incompetence are not analogous terms when a court reviews whether a defendant will be legally required to proceed with his or her trial. A defendant can be found physically incompetent based on a severe medical condition and still proceed with trial. See United States v. Landsman, 366 F.Supp. 1027 (S.D.N.Y. 1973) (medical testimony that defendant suffered from aneurysm near optical nerve in brain did not render defendant physically and mentally incompetent to stand trial); United States v. DePalma,466 F.Supp. 920 (S.D.N.Y. 1979) (heart condition did not render defendant unable to stand trial).
We can find no case where this Court or any other appellate court has held that a claim of physical incompetence to stand trial is not subject to waiver in a collateral proceeding. We hold that the issue of physical incompetence is waived in a collateral proceeding because it could have been raised at trial or on appeal. Rule 32.2(a)(3) and 32.2(a)(5), Ala.R.Crim.P.
Moreover, we have reviewed the record of DeBruce's trial proceedings and find no indication that DeBruce was so physically incapacitated that he was not able to participate in the proceedings. Indeed, Mathis testified at the postconviction hearing that he never got the impression that DeBruce was sick or in pain. DeBruce also made a statement to the jury before he was sentenced and pleaded with the jurors to spare his life. Last, the circuit court was present during the trial and had the opportunity, unlike this Court, to view DeBruce's demeanor.
The circuit court correctly denied DeBruce's petition for postconviction relief.
AFFIRMED.
McMILLAN, P.J., and BASCHAB and SHAW, JJ., concur.
COBB, J., recuses herself.
[1] Our records show that only one of DeBruce's codefendants filed an appeal in this Court. Charles Lee Burton was convicted of capital murder and was sentenced to death. His conviction and sentence were affirmed on direct appeal. See Burton v. State,651 So.2d 641 (Ala.Crim.App. 1993).
The presentence report contained in the transcript of DeBruce's direct appeal shows that Jones, Brantley, McCants, and Long were all charged with murder made capital because it was committed during the course of a robbery. McCants agreed to testify against DeBruce in exchange for pleading guilty to robbery and being sentenced to life in the penitentiary. The presentence report does not show the final disposition of the other codefendants' cases.
[2] DeBruce does not pursue this claim on appeal. Claims not raised in briefs to this Court are deemed abandoned. Brownlee v.State, 666 So.2d 91 (Ala.Crim.App. 1995).
[3] We find it interesting that Mathis testified at the postconviction evidentiary hearing that since DeBruce's trial he has represented "several" of DeBruce's 10 siblings.
[4] Our records shows that Mathis never filed a fee claim for his services in representing DeBruce on appeal.
[5] We note that § 15-12-21 was amended in 1999, and there is no longer a cap for fees an attorney appointed to represent a capital defendant in the circuit court can collect.
[6] DeBruce included selected portions of the trial court record with his petition; however, we have reviewed the entire record of the trial proceedings in this case, which was filed in the direct appeal. This Court may take judicial notice of our own records. Nettles v. State, 731 So.2d 626 (Ala.Crim.App. 1998).
[7] Crohn's disease is defined as "a chronic inflammatory disease of the gastrointestinal tract that . . . is characterized by cramping and diarrhea." Merrian-Webster's CollegiateDictionary 478 (11th ed. 2003).
[8] The presentence report also shows that DeBruce attended college at UAB.
[9] Effective August 1, 2002, Rule 32.2(c), Ala.R.Crim.P., was amended to change the limitations period from two years to one year. The two-year limitations period applies in this case because the petition was filed before August 1, 2002.
[10] Adams served as district attorney from February 1998, when he was appointed, until January 1999, when a newly elected district attorney took office after defeating Adams in the November election. *Page 1101